**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHAH RAHMAN, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff(s),

v.

KID BRANDS, INC., BRUCE G. CRAIN, and GUY A. PAGLINCO,

        Defendants.

Civil Action No.: 11-1624 (JLL)

**OPINION**

**LINARES**, District Judge.

    This matter comes before the Court by way of Defendant Kid Brands, Inc. ("Kid Brands")'s Motion to Dismiss Lead Plaintiff Shah Rahman ("Plaintiff")'s amended putative class action complaint ("Amended Complaint") for failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(6). [Docket Entry No. 31]. Defendants Bruce G. Crain and Guy A. Paglinco ("Individual Defendants") join Kid Brands' motion on the same grounds [Docket Entry Nos. 32 and 33]. The Court has considered the Parties' submissions and rules on the motion on the papers. Fed. R. Civ. P. 78. For reasons set forth below, the Court **GRANTS** Defendants' Motions to Dismiss the Complaint without prejudice to the refiling of said Complaint in accordance with the pleading deficiencies stated herein.

### I. BACKGROUND

    Plaintiff Rahman is the Lead Plaintiff seeking to represent a proposed class of investors who purchased common stock of Kid Brands between March 26, 2010 and August 16, 2011,

inclusive ("Class Period"), against Defendant Kid Brands and the Individual Defendants for securities fraud in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. (Am. Compl., ¶ 1). Kid Brands is a New Jersey corporation which designs, manufactures through third parties, and markets infant furniture and care products sold primarily to retailers in North America, the United Kingdom, and Australia. (Id., ¶ 33). Kid Brands has, inter alia, three wholly-owned subsidiaries alleged to have become the subject of the materially false and misleading statements at issue in the Amended Complaint. (Id., ¶ 9). LaJobi Industries, Inc. ("LaJobi") was acquired as a subsidiary by Kid Brands in 2008 and produces nursery furniture and related products. (Id., ¶¶ 5, 33). Kids Line, LLC ("Kids Line") and CoCaLo, Inc. ("CoCaLo") are subsidiaries which specialize in infant bedding and related nursery accessories and décor, and were acquired by Kid Brands in 2004 and 2008, respectively. (Id., ¶¶ 5, 33). During the Class Period, Defendant Bruce G. Crain ("Crain") was the President and Chief Executive Officer ("CEO") of Kid Brands and served as a member of its Board of Directors, signing and certifying the Company's SEC filings, including Kid Brands' Forms 10-Q and 10-K. (Id., ¶ 34). Defendant Guy A. Paglinco ("Paglinco") was the Vice-President and Chief Accounting Officer ("CAO") of Kid Brands during the Class Period, and also signed and certified the Company's SEC filings, including its Forms 10-Q and 10-K. (Id., ¶ 35).

Plaintiff's Amended Complaint centers on misleading statements concerning Kid Brands' alleged wrongdoing in violation of federal anti-dumping laws since at least 2006. (Id., ¶¶ 90, 91). Specifically, Plaintiff alleges that Kid Brands avoided import duties on the products of LaJobi, CoCaLo and Kids Line, imported from China and elsewhere, and engaged in illegal staffing practices overseas while making statements during the Class Period which, according to

Plaintiff, "emphasized the purported accuracy and effectiveness of the Company's internal disclosure controls and also touted the earnings of its subsidiaries while downplaying liabilities. These statements were misleading to investors because Defendants knew and/or recklessly disregarded that three out of Kid Brands' four business entities posted inflated earnings on the basis of illegal conduct and that Kid Brands had engaged in improper staffing practices across Asia." (Id., ¶ 9). The statements at issue in the Amended Complaint fall into two categories: (1) statements made by Defendants in SEC filings and press releases between March 26, 2010 and November 4, 2010, prior to their notification that LaJobi was selected by U.S. Customs for a Focused Assessment of its import practices and procedures in late December 2010; and (2) statements made by Defendants in SEC filings and press releases subsequent to that notification until August 16, 2011.

With respect to the first category of statements, the Amended Complaint alleges that Kid Brands' subsidiaries filed incorrect entries and invoices with U.S. Customs that included incorrect classifications of certain products imported by the subsidiaries. (Id., ¶ 90). The Amended Complaint does not detail the nature or timing of the purportedly illegal activities on the part of Kid Brands and its subsidiaries except to broadly assert that such incorrect entries occurred between 2006 and the end of the Class Period, and that they were in violation of federal law. The Amended Complaint states as a general matter that federal anti-dumping law is geared towards preventing foreign countries from inundating local markets with low-priced foreign goods with which domestic companies cannot compete, levying higher duties on certain countries and even different manufacturers within the same country: "[t]o avoid paying these increased duties, manufacturers in high-duty countries, such as China, will often disguise shipping materials to create the appearance that the goods came from a non-assessed country or a

factory assessed at a lower rate. In the furniture industry, one commonly used method to circumvent such high fees is to ship the goods to Vietnam, because the United States does not impose duties on furniture made in Vietnam." (Id., ¶ 7). Kid Brands is alleged to have utilized an overseas company, L&J Industries, to "package and ship Chinese manufactured products to the United States without paying heavy import fees by disguising their place of origin," but the time periods and mechanisms by which this occurred are again not specified in the Amended Complaint. (Id., ¶ 12). Further, other alleged illegal activities that occurred, also in an unspecified time frame, include "payments into Thailand [that] may have violated a criminal law in that country that requires certain disclosures in connection with wire transfers into that country, and that its employment practices likely violated a criminal law in Hong Kong, in the category of a petty violation, that requires registration by foreign companies doing business in that country. In addition, the Company may have violated certain foreign regulatory, administrative and civil laws in connection with its payment and employment practices in Asia." (Id., ¶ 13).

Plaintiff asserts that, despite the incorrect entries made and illegal practices engaged in by Kid Brands' subsidiaries, Kid Brands' filed and issued the following materially false and misleading statements regarding the profitability of the company, omitting disclosures about ineffective controls and procedures as well as the company's engagement in illegal staffing practices in various Asian countries: (1) an SEC Form 10-K annual report for the year ending December 31, 2009, filed on March 26, 2010 (Id., ¶¶ 44-51); (2) a release on sales an Kid Brands' "2010 Growth Outlook" issued on March 29, 2010 (Id., ¶¶ 52-53); (3) an SEC Form 10-Q quarterly report for the quarter ending March 31, 2010, filed on May 5, 2010 (Id., ¶¶ 54-57); (4) a press release reporting growth in net sales and net income issued on May 6, 2010 (Id., ¶¶

58-59); (5) an SEC Form 10-Q quarterly report filed on August 4, 2010 (Id., ¶¶ 60-63); (6) a

press release announcing the filing of the quarterly report in addition to strong growth in the

LaJobi lines and margin gains in the CoCaLo and Kids Lines issued on August 5, 2010 (Id., ¶¶

64-67); (7) an SEC Form 10-Q quarterly report for the period ending September 30, 2010, filed

on November 3, 2010 (Id., ¶¶ 68-71); and (8) a press release announcing strong growth in the

LaJobi and CoCaLo lines issued on November 4, 2010.  All of these statements are alleged to be

misleading and materially false since they: (1) made financial forecasts of growth to investors

based on current plans without discussing Kid Brands' illegal conduct that would affect the

company's margin; (2) suggested collaborative efforts between Kid Brands and its subsidiaries

and local vendors which were working to mitigate costs when in fact costs were being mitigated

by avoiding U.S. Customs duties; (3) indicated that Kid Brands was maintaining tight internal

controls when illegal activity was occurring at its subsidiaries; and (4) alerted investors that debt

repayments were not anticipated when Kid Brands had accrued millions of dollars in custom

duty violations that it would later have to pay the U.S. government.

 In late December 2010, after these statements were made by Defendants, LaJobi was

selected by U.S. Customs for a Focused Assessment of its import practices and procedures. (Pl.

Opp'n Br., at 15; Decl. of Jeffrey W. Herrmann in Supp. of Pl.'s Opp'n ("Herrmann Decl."),

Form 10-Q filed Nov. 8, 2011, Ex. A, at 20; Def. Kid Brands Reply Br., at 8).  A Focused

Assessment is "an audit conducted by CBP [Customs and Border Protection] auditors that seeks

to determine the adequacy of an importer's internal controls, to ascertain the potential areas of

risk of an importer's noncompliance with CBP laws and regulations, and to develop improved

internal compliance policies and procedures for the future . . . one . . purpose of a Focused

Assessment . . . is . . . to collect money for violations if it is determined that the proper amount of

duties has not been paid and to seek penalties when CBP thinks it appropriate." (Cert. of Robert J. Del Tufo in Supp. of Def. Kid Brands' Mot. to Dismiss ("Del Tufo Cert."), Michael D. Sherman et al., "U.S. Customs: A Practitioner's Guide to Principles, Processes and Procedures" (ABA Section of International Law, 2009), Ex. D, at 179). The Focused Assessment commenced on January 19, 2011. (Pl. Opp'n Br., at 15; Herrmann Decl., Ex. A, at 20; Def. Kid Brands Reply Br., at 8).

Defendants did not disclose to their investors the fact that they had been selected for a Focused Assessment until March 15, 2011, when Kid Brands issued a press release. (Am. Compl., ¶ 76; Del Tufo Cert., Ex. B). The press release made a number of disclosures including the following facts: upon discovery of potential issues regarding customs duties, the Board initiated an investigation, supervised by a Special Committee of three non-management members of the Board; Kid Brands retained an outside law firm, Skadden, Arps, Slate, Meagher & Flom, LLP, to investigate the payment irregularities in customs duties and independently review the conduct of LaJobi employees; on the basis of the investigation, the Board concluded that there was misconduct by certain LaJobi employees in connection with incorrect payment of duties, including misidentifying the manufacturer and shipper of the products; the Board terminated two high-ranking LaJobi employees–Larry Bivona (President) and LaJobi's Managing Director of Operations; the investigation regarding the anti-dumping law violations was ongoing. (Del Tufo Cert., Ex. B). Defendant Crain claims that it was only "[i]n early 2011, as the result of an investigation conducted by independent counsel at the request of a special committee of the Company's board, [that] the Company learned about and disclosed improper customs practices at its subsidiary." (Def. Crain Br., at 4).

Then, on March 31, 2011, Kid Brands filed a 10-K Form with the SEC reporting that LaJobi had been selected by U.S. Customs in December 2010 for a "Focused Assessment" of its import practices and procedures, and that the Focused Assessment had commenced on January 19, 2011. (Am. Compl., ¶¶ 79-82). The 10-K Form further stated that Kid Brands' gross margin could be adversely affected by import duties owed to U.S. Customs and Border Protection "with respect to incorrect import duties applied on certain wooden furniture imported from the PRC," and stating that the company had "discontinued the practices that resulted in the charge for anticipated anti-dumping duty, and we believe that our ability to procure the affected categories of wooden bedroom furniture will not be materially adversely affected in future periods." (Id., ¶ 79). In terms of payments and losses resulting from said misconduct, the SEC disclosure asserted that Kid Brands: (1) would withhold certain earn-out payments owed in connection with the acquisition of LaJobi, previously estimated at approximately $12 to $15 million; (2) a charge of $6.86 million, representing the amount of customs payments owed as a result of the misconduct of LaJobi; (3) $340,000 in interest being taken for the cost of sales for the year ending December 2010; (4) other penalties and interest above the amount of the named charge could still be assessed by U.S. Customs; and (5) a possibility that the company could face a penalty of up to 100% customs duty. (Id.). Finally, the March 2011 10-K reported an increase of 13.1% in net sales that "was primarily the result of organic top-line growth at LaJobi, Sassy and CoCaLo. The strong growth at LaJobi was driven primarily by the performance of its Graco® licensed products and recent crib placements at Walmart stores . . . and CoCaLo's increase was due to the continued strong performance at several top-selling collections. . . . In absolute terms, gross profit increased as a result of the increase in net sales." (Id., ¶ 81).

Defendants subsequently made four sets of statements, between May 2, 2011 and August 16, 2011, which Plaintiff claims were materially false and misleading. First, Defendants filed an amended annual report Form 10-K/A for the year ending in December 31, 2010 with the SEC on May 2, 2011 which included a table illustrating marking whether Kid Brands or its subsidiaries met its performance targets, a table Plaintiff claims is misleading as the performance levels indicated therein did not account for the fact that, "as early as 2006, Defendants paid illegally low U.S. Customs duties on goods imported from China and elsewhere." (Id., ¶¶ 83-84). Second, Defendants filed an SEC Form 10-Q for the quarterly period ending March 31, 2011, in which they reasserted that the company had "discontinued practices that resulted in the charge for anticipated anti-dumping duty . . . [and] initiated certain enhancements to its processes and procedures in areas where underpayments were found," even though, Plaintiff asserts, the illegal customs practices continued until June 2011 and the company was still underpaying U.S. Customs duties at the time of said statements. (Id., ¶¶ 85-86). Third, on August 15, 2011, Defendants filed an SEC Form 10-Q for the quarter ending June 30, 2011, in Kid Brands' non-compliance with U.S. anti-dumping laws were more fully disclosed with respect to Kids Line and CoCaLo, including the filing of "incorrect entries and invoices with U.S. Customs as a result of, in the case of Kids Line, incorrect descriptions, classifications and valuations of certain products imported by Kids Line and, in the case of CoCaLo, incorrect classifications of certain products imported by CoCaLo. As a result of these findings to date, the Company currently estimates that it will incur aggregate costs of approximately $2.4 million (pretax) relating to customs duty for the years ended 2006 through 2010 and the six months ended June 30, 2011." (Id., ¶ 90). Finally, on August 16, 2011, Defendants filed an SEC Form 8-K, reiterating the Kids Line and CoCaLo misconduct and expanding on its costs with regard to LaJobi's improper

practices, a disclosure which resulted in a drop of Kid Brands' stock from $4.49 per share to $2.97 per share on August 22, 2011. (Id., ¶¶ 91-92).

Plaintiff's Amended Complaint asserts two counts based on the above-cited allegations. Count I is brought against all defendants pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, asserting that Defendants acted both individually and collectively to defraud investors by making materially false or misleading statements in connection with the sale of Kid Brands' stock in their SEC filings and press releases. Count II alleges that Defendants Crain and Paglinco were "controlling persons" of Kid Brands, and violated Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), by causing the Section 10(b) violations described in Count I.

## II.  LEGAL STANDARDS

Defendants assert grounds for a motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). In reviewing such motions, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1995, 1965 (2007). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). A complaint survives a Rule 12(b)(6) motion to dismiss if it states a claim to relief that is "plausible on its face" regarding plaintiff's entitlement to the relief sought. Twombly, 127 S.Ct. at 1965-66.

Since Plaintiff's Amended Complaint brings claims for securities fraud, it must meet the heightened pleading requirements set forth under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA")). Rule 9(b) provides that, "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). At a minimum, Rule 9(b) requires "that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper store' – that is, the 'who, what, when, where and how' of the events at issue." In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004)(citation omitted).

Complaints alleging securities fraud must also meet the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA was enacted by Congress as a check against abusive litigation by private parties, and it establishes heightened pleading requirements for the first two elements of a securities fraud claim. See Tellabs, Inc. v. Makor Issues & Rights, Ltd. ("Tellabs I"), 551 U.S. 308, 313 (2007). First, with respect to misleading statements and omissions of material fact, the PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Also, a misleading statement or omission must have been misleading at the time it was made, and "liability cannot be imposed on the basis of subsequent events." In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1330 (3d Cir. 2002). In Matrixx Initiatives, Inc. v. James Siracusano, the Supreme Court stated that the materiality requirement is satisfied when there is "'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of

information made available.'" 131 S. Ct. 1309, 1318 (2011)(quoting Basic Inc. v. Levinson, 485

U.S. 224, 231-32 (1988)(other citations omitted).   Liability for fraudulent statements may focus

on the individual defendants who made or approved said statements, but they also may be

imputed to a corporate defendant "because '[a] corporation is liable for statements by employees

who have apparent authority to make them.'" Institutional Investors Grp. v. Avaya, Inc., 564

F.3d 242, 252 (3d Cir. 2009)(citing Makor Issues & Rights, Ltd. v. Tellabs, Inc. ("Tellabs II"),

513 F.3d 702, 708 (7th Cir. 2008)(citations omitted)).

     Secondly, with respect to scienter, the PSLRA requires that for "each act or omission

alleged to violate [Section 10(b)], [that a plaintiff] state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-

4(b)(2).  For an inference of scienter to qualify as "strong," it "must be more than merely

plausible or reasonable—it must be cogent and at least as compelling as any opposing inference

of nonfraudulent intent. . . . The inference . . . need not be irrefutable, i.e., of the 'smoking-gun'

genre, or even the 'most plausible of competing inference.'" Tellabs I, 551 U.S. at 314, 324.  In

this Circuit, scienter may be shown by alleging strong circumstantial evidence of either

conscious misbehavior or recklessness, with recklessness being defined as "highly unreasonable

(conduct), involving not merely simple, or even inexcusable negligence, but an extreme

departure from the standards of ordinary care, . . . which presents a danger of misleading buyers

or sellers that is either known to the defendant or is so obvious that the actor must have been

aware of it." S.E.C. v. The Infinity Group Co., 212 F.3d 180, 192 (3d Cir. 2000); see also

Avaya, 564 F.3d at 267-68; In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534-35 (3d Cir. 1999).

Further, the PSLRA requires plaintiffs to "specify the role of each defendant, demonstrating each

defendant's involvement in the misstatements and omissions."  Winer Family Trust v. Queen,

503 F.3d 319, 335-36 (3d Cir. 2007).  Omissions and ambiguities "count against inferring

scienter."  Tellabs I, 551 U.S. at 326.  Where a statement or omission is alleged to have been

made "on information and belief," a plaintiff must "state with particularity all facts on which that

belief is formed," describing the sources of information with particularity, providing the who,

what, when, where and how of the sources, as well as the who, what, when, where and how of

the information those sources convey."  15 U.S.C. § 78u-4(b)(1); Avaya, 564 F.3d at 253.  A

court's inquiry into scienter must "consider the complaint in its entirety" in its determination of

"whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not

whether any individual allegation, scrutinized in isolation, meets the standard."  Tellabs I, 551

U.S. at 322; see also Avaya, 564 F.3d at 273 ("inference is not arithmetic.  The inferential

significance of any single allegation can be determined only by reference to all other

allegations.").  Further, in considering the complaint in its entirety, courts should consider on a

motion to dismiss "documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice."  Id.  A motion to dismiss the complaint shall be granted

if the pleading requirements for both the misleading statements or omissions and scienter are not

met.  15 U.S.C. § 78u-4(b)(3).  As stated infra, Plaintiff's Amended Complaint must also comply

with the heightened pleading standards as set forth under Fed. R. Civ. P. 9(b), however, to the

extent that Rule 9(b)'s allowance of general pleading with respect to state of mind conflicts with

the PSLRA's scienter requirement, the PSLRA supersedes Rule 9(b) as it relates to Rule 10b-5

actions.  See Avaya, 564 F.3d at 253; Alpharma, 372 F.3d at 148.

## III.  DISCUSSION

A.     Violation of Securities Exchange Act § 10(b) and Rule 10b-5 Against All Defendants

Section 10(b) of the Securities Exchange Act prohibits the "use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5 created a private right of action for investors harmed by materially false or misleading statements to enforce Section 10(b), and it makes unlawful that any person "make any untrue statement of a material fact or . . . omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." See 17 C.F.R. 240.10b-5; Alpharma, 372 F.3d at 147. In order to state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege that defendants: (1) made a misstatement or an omission of material fact; (2) with scienter; (3) in connection with the purchase or the sale of a security; (4) upon which the plaintiff reasonably relied; and (5) plaintiff's reliance was the proximate cause of his injury. Avaya, 564 F.3d at 251.

Defendants do not dispute that the elements of reliance, loss causation, and damages have been properly pled in Plaintiff's Amended Complaint. However, Defendants do contest that misleading statements or omissions of material fact were made in filings with the Securities Exchange Commission ("SEC") and in press releases, and they also contest the sufficiency of Plaintiff's allegations regarding scienter as they pertain to both Kid Brands and the Individual Defendants. The Court will thus first consider whether Plaintiff has met his burden of establishing that misleading statements and omissions of material fact were made by Defendants, considering next whether Plaintiff has sufficiently alleged facts supporting a strong inference that such statements were made knowingly or recklessly. Since the Court finds that Plaintiff's

Amended Complaint is deficient in its allegations under the heightened pleading requirements of the PSLRA, the Court dismisses the Amended Complaint without prejudice. The viability of Count II of the Amended Complaint alleging controlling person liability pursuant to Section 20(b) of the Securities Exchange Act against Defendants Crain and Paglinco is also dismissed as it is contingent upon the success of Plaintiff's Section 10(b) claim. See, e.g. Alpharma, 372 F.3d at 153 ("Under the plain language of [Section 20(a)], plaintiffs must 'prove not only that one person controlled another person, but also that the "controlled person" is liable under the Act. If no controlled person is liable, there can be no controlling person liability.'")(citation omitted); Avaya, 564 F.3d at 252 ("liability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person").

### 1. Misleading Statements and Omissions

Overall, Plaintiff's Amended Complaint points to fourteen instances between March 26, 2010 and August 16, 2011 in which Defendants published statements alleged to be materially false and misleading. Said statements fall into two general categories: (1) material omissions regarding the nature and scope of U.S. Customs violations as well as government investigations into the company's compliance with federal law; and (2) statements about the company's financial health, customs compliance and internal controls which allegedly misstated actual conditions at the company. These sets of statements will be considered in turn, with the Court agreeing in part and disagreeing in part that said statements are materially false and misleading.

### a. Failures to Disclose Material Facts Regarding U.S. Customs Violations and Government Investigations

Plaintiff alleges that, until the partial disclosure on March 15, 2011 of the U.S. Customs violations that had purportedly occurred at LaJobi, the company did not notify its investors of violations that had been taking place since at least 2006. Further, in the March 15, 2011 press

release disclosure, Defendants "failed to disclose the pervasiveness of U.S. Customs violations by Kid Brands subsidiaries and the extent of Kid Brands' costs and penalties resulting from violations by CoCaLo and Kids Line." (Am. Compl., ¶ 78). It was only in Defendants' August 15 and 16, 2011 SEC disclosures in Forms 10-Q and 8-K, respectively, that Defendants presented "the full extent of Kid Brands' misconduct with regard to U.S. Customs violations . . . [including] the Kids Line and CoCaLo misconduct and expand[ing] on its costs with regard to LaJobi improper practices." (Id., ¶¶ 90-91). Plaintiff claims that Defendants had a duty to disclose the information regarding U.S. Customs violations and the Government investigations earlier since such information was "material to accurately inform rather than mislead prospective buyers," and "Kid Brands was forced to disgorge approximately $7 million in earnings made as a result of skirting customs violations. . . . Clearly, the large amount of duty repayment indicates a material omission that would have significantly altered the mix of information investors relied upon." (Pl. Opp'n Br., at 35-36).

Defendants make three arguments in response. First, Defendants argue that the company's good-faith actions upon discovering issues at the LaJobi subsidiary–including retention of an outside law firm to investigate customs duties and issuing a press release on March 15, 2011, followed by additional disclosures—were prompt and voluntary. (Def. Kid Brands Br., at 6-8). Second, they contend that the statements made were not rendered untrue by the alleged customs violations but were rather accurate statements for which Plaintiff has "no factual basis to allege that the Company was subsequently investigated by U.S. Customs – in preparation for a Focused Assessment, the board voluntarily initiated an internal investigation that led to the Company voluntarily reporting problems to U.S. Customs." (Id., at 28-30). Finally, Defendants argue that they had no duty to disclose the Focused Assessment since: (1) "a

Focused Assessment is merely a review by U.S. Customs and selection is based on objective criteria, not a suspicion of wrongdoing"; and (2) no duty to disclose was established between December 2010 and March 2011 when the investigation was ongoing and the eventual outcome was unknown. (Def. Kid Brands Reply Br., at 7-8).

In order to prevail on a Section 10(b) duty to disclose claim, a defendant's misleading statement or omission must be shown to be material, a requirement satisfied "when there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" Matrixx, 131 S. Ct. at 1318 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)). Silence, absent a duty to disclose, is not misleading under Rule 10b-5. Basic, 485 U.S. at 239 n. 17. The Supreme Court has rejected applying a bright-line rule regarding the reporting of adverse events so as not to "'artificially exclude' information that 'would otherwise be considered significant to the trading decision of a reasonable investor.'" Matrixx, 131 S. Ct. at 1319 (quoting Basic, 485 U.S. at 236). Thus, "assessing the materiality of adverse event reports is a 'fact-specific' inquiry, . . . that requires consideration of the source, content, and context of the reports." Id., at 1321. Once a disclosure is made, however, an obligation attaches to make the disclosure accurate, and a statement "is false or misleading if it is factually inaccurate, or additional information is required to clarify it." In re Nice Sys., Ltd. Secs. Litig., 135 F. Supp. 2d 551, 573 (D.N.J. 2001).

The Court finds that there is a substantial likelihood that the disclosure of the omitted facts regarding U.S. Customs violations by three out of four of Kid Brands' subsidiaries would have been viewed by a reasonable investor as significantly altering the "total mix" of information available to him or her. Accepting as true the underlying allegations that Defendants

16

misclassified products so as to avoid paying higher customs duties, the earnings reported in Defendants' SEC disclosures were inflated to the extent that they did not accurately portray the company's actual costs as calculated in accordance with the company's compliance with federal law. Defendants cite to this Court's finding in <u>Galati v. Commerce Bancorp, Inc.</u> that, as long as they are accurate, earnings statements themselves do not create liability under Rule 10b-5. <u>See</u> 2005 U.S. Dist. LEXIS 26851, * 22 (D.N.J. Nov. 7, 2005). However, this Court in <u>Galati</u> also cited to Third Circuit precedent in <u>Craftmatic Sec. Litig. V. Kraftsow</u>, which held that "the nondisclosure of a statutory violation may be an omission of information necessary to make other statements not misleading. To that extent, a violation of consumer laws that is substantially likely to be significant to a reasonable investor is a fact that must be disclosed, even though the legal consequences of the violation may be a contingency." <u>See</u> 890 F.2d 628, 640 n. 16 (3d Cir. 1989). In this case, even though the earnings statements themselves may have been empirically accurate as to Kid Brands' past earnings, and thus not actionable under Section 10(b), when Defendants made statements that an increase in sales was "primarily" attributable to "strong growth at LaJobi," such statements about the <u>sources</u> of the company's earnings are actionable as misleading in light of the attributability of said earnings to U.S. customs violations. Therefore, the Court agrees with Plaintiff that such statements were materially misleading with respect to the total mix of information available to investors.

Still, the Court disagrees with Plaintiff's additional argument that Defendants were required to disclose the U.S. Customs investigations into LaJobi under Third Circuit law earlier than its March 15, 2011 disclosure. The Third Circuit has held that "[e]ven non-disclosure of material information will not give rise to liability under Rule 10b-5 unless the defendant had an affirmative duty to disclose that information. . . . Such a duty to disclose may arise when there is

insider trading, a statute requiring disclosure, or an inaccurate, incomplete or misleading prior disclosure." Oran v. Stafford, 226 F.3d 275, 285-86 (3d Cir. 2000); see also Winer Family Trust, 503 F.3d at 329. Since the company's notification by U.S. Customs of a Focused Assessment took place in December 2010, with the Assessment beginning in January 2011, Defendants' disclosure of said information on March 15, 2011 was sufficient as the information to be disclosed did not involve insider trading, information required under statute to be disclosed, or information required to correct an inaccurate, incomplete or misleading prior disclosure. To the extent that the customs violations may be deemed to reveal the inaccuracy, incompleteness or misleading nature of prior disclosures regarding the source of LaJobi's growth, absent a statutory or regulatory requirement to disclose within a short, designated period of time said information, the Court does not find the two-month delay of disclosure misleading, particularly in light of Defendants' efforts to investigate the matter through an independent law firm and because a company may not immediately be expected to identify the inaccuracy of prior disclosures relative to such newly revealed information. See also, SEC General Instructions as to Use of Form 8-K (specifying that a report be furnished within four business days after occurrence of events specified in Sections 1 – 6 and 9 of the Form, and not including investigations such as the one at issue in the Amended Complaint).

The Court does, however, find that Defendants failure to disclose misconduct at CoCaLo and Kids Line until August 15 and 16, 2011 was misleading in light of an inaccurate, incomplete or misleading prior disclosure, namely the statements regarding investigations only into LaJobi regarding incorrect import duties in March 2011 along with accompanying statements that Defendants had "discontinued the practices that resulted in the charge for anticipated anti-dumping duty." (Am. Compl., ¶ 79). While Defendants cite to three district court cases to

support their contention that Defendants had no duty to disclose such information, the Court finds those cases to be distinguishable from the case at bar. In In re Thornburg Mortg., Inc. Sec. Litig., the District of New Mexico found that defendant company had no duty to disclose a New York Stock Exchange ("NYSE") investigation noticed to the company seven weeks before the company chose to disclose it. 695 F. Supp. 2d 1165, 1212 (D.N.M. 2010). However, the court in that case did not find that the lag was justifiable; rather, it found that the company "disclosed material facts quickly, after reasonable investigation, but sometimes facts were still in the intelligence pipeline when an SEC filing was made, in which case the fact was quickly disclosed in a Form 8-K [three days after the material event]." Id., at 1213. Further, the court noted that it was "not clear whether the NYSE's concerns dealt with [the company's] conduct or the conduct of a private trader dealing in [the company's] stock." Id., at 1209 n. 32. Thus, unlike in this case, the company sued for securities fraud in Thornburg made almost immediate disclosures regarding the material event at issue, and the government investigation was not alleged to have clearly involved or targeted the company directly.

Defendants also cite to Lopes v. Vieira, in which the Eastern District of California cited to another case in the portions relevant to Defendant's arguments—In re Boston Sci. Corp. Sec. Litig.—where a company did not disclose a Department of Justice ("DOJ") investigation that occurred over a period of many years. 543 F. Supp. 2d 1149 (E.D. Cal. 2008)(citing Boston Sci. Corp., 490 F. Supp. 2d 142, 156-57 (D. Mass. 2007)). However, in the underlying District of Massachusetts case, the company had disclosed the potential risks of an adverse outcome of the DOJ investigation in 10-K filings during the relevant class period, but plaintiff contested whether said disclosure misled the investment community because it did not disclose the potential risk of an adverse outcome of said investigations. Id. While the 10-K filings in that case notified

19

investors that there could be no assurance that the investigations would result in a favorable outcome for the company, and that the company's performance may be affected by said outcome, the District of Massachusetts found that the company need not go beyond such statements to require defendants to confess guilt: "Defendants had no duty to confess guilt. . . . Although Defendants had a duty to disclose underlying material facts that would adversely affect its business, that duty did not extend to pronouncing wrongdoing while the DOJ investigation was ongoing." Id. Furthermore, the First Circuit Court of Appeals reversed and remanded the District of Massachusetts' ruling in that case, finding that "we cannot say that as a matter of law the complaint fails to raise a reasonable inference that this was a material omission." Miss. Pub. Emples. Ret. Sys. v. Boston Sci. Corp., 523 F.3d 75, 87 (1st Cir. 2008).

Finally, in Ballan v. Wilfred Am. Educ. Corp., the Eastern District of New York followed the same reasoning as the District of Massachusetts in Boston Sci. Corp., finding that defendants were not required to tell shareholders of the likelihood of indictment following a federal investigation. 720 F. Supp. 241, 248 (E.D.N.Y. 1989). However, the Court made that determination in the context of accepting defendants' concessions that "in 1985 and 1986 they had to reveal, as they did, the investigations of [defendant, and] that they were obligated to disclose, as they did, the . . . indictments." Id. In this case, Defendants did not disclose the investigations into CoCaLo and Kids Line until August 15, 2011, so the issue is not whether Defendants were required to disclose their guilt in relation to ongoing investigations, but rather whether said investigations should have been disclosed if said investigations rendered the prior disclosures on March 15 and 31, 2011, incomplete.   Therefore, the case law that Defendants cite does not support their contention that they had no duty to disclose the fact that investigations were occurring concerning additional potential liability for Defendants' violations of federal law.

Further, the Court finds that the delayed disclosure in August 2011 could be found material by a jury, and Plaintiff has sufficiently pled Defendants' failure to so disclose said investigations as misleading.

      b.  Statements Regarding Financial Health, Customs Compliance and Internal Controls

      Beyond Plaintiff's failure to disclose claims, Plaintiff's Amended Complaint points to twelve instances—eight disclosures to the SEC in 10-K, 10-Q and 8-K Forms, and four press releases—were Defendants allegedly made misleading statements regarding the company's financial health, customs compliance and internal controls.  Specifically, Plaintiff claims that Defendants' SEC disclosures and press releases between March 26, 2010 and May 15, 2011, Defendants made a series of statements which misled investors as to: the amount ~~of ul~~timate liability with respect to customs violations (March 26, 2010 Form 10-K; May 5, 2010 Form 10-Q; August 4, 2010 Form 10-Q; November 3, 2010 Form 10-Q); the effectiveness and sufficiency of the company's internal controls and procedures as well as the discontinuation of practices that resulted in anti-dumping liability (March 26, 2010 Form 10-K; May 5, 2010 Form 10-Q; August 4, 2010 Form 10-Q; November 3, 2010 Form 10-Q; May 31, 2011 Form 10-K); the financial health of the company based on earnings, growth, and performance targets (March 29, 2010 press release; May 6, 2010 press release; August 5, 2010 press release; November 4, 2010 press release; March 31, 2011 Form 10-K; May 2, 2011 Form 10-K/A); the projected profitability of Kid Brands subsidiaries over the coming years (March 26, 2010 Form 10-K; August 5, 2010 press release); and the company's collaboration with vendor and retail partners to mitigate costs of goods and maintain tight controls on discretionary expenses (November 4, 2010 press release).  (Am. Compl., ¶¶ 44-75, 79-86, 90-92).  Further, Plaintiff contends that when Defendants did disclose wrongdoing on March 15, 2011, their press release of that date misled

investors by emphasizing the termination of two of LaJobi executives while, in fact, the customs

violations were pervasive in at least two other subsidiaries and the misconduct was not narrowly

limited to LaJobi.  (Id. at ¶¶ 76-78).

Defendants argue that the statements listed in the Amended Complaint amount merely to

"corporate puffing" and are not actionable as a matter of law under the Third Circuit's ruling in

Advanta that defendants' positive portrayals of previous successes and expressions of confidence

in a company's prospects for future growth do not create liability under Section 10(b).  (Def. Kid

Brands Br., at 27)(citing Advanta, 180 F.3d at 538).  Defendants focus on Plaintiff's citation to

their statements in their March 29, 2010 and November 4, 2010 press releases, arguing that such

statements "are exactly the type of general, optimistic puffing that are non-actionable as a matter

of law."  (Id., at 28).  Second, Defendants claim that many of the alleged misrepresentations are

not in fact untrue as they referred to ultimate liability for pending legal actions and accurately

reported net sales and revenues.  (Id., at 29).  Citing Advanta and this Court's findings in Galati

referenced infra, Defendants assert that, "as long as [said reported sales and revenues] are

accurate, earnings statements themselves do not create liability under Rule 10b-5."  (Id., citing

Galati, 2005 U.S. Dist. LEXIS at * 22, aff'd 220 F. Appx. 97 (3d Cir. 2007)).

As stated infra, the Court agrees with Defendants that statements made by them regarding

factual reporting of past earnings and revenues, as long as they are accurate as to the earnings

and revenues calculated at that time, are not actionable under Third Circuit law.  Also, "vague

and general statements of optimism 'constitute no more than "puffery" and are understood by

reasonable investors as such.'"  Advanta, 180 F.3d at 538.  However, accepting as true the facts

alleged in the Amended Complaint, not all of the statements referred to by Plaintiff can be

circumscribed as either puffery or true in the face of the customs violations.  Specifically, if

customs violations were in fact so pervasive as to have been occurring in three out of four of Kid

Brands' subsidiaries, statements regarding the company's limited scope of liability,[1] the

effectiveness and sufficiency of the company's internal controls and procedures,[2] and the

discontinuation of practices that resulted in anti-dumping liability[3] are material as there is a

substantial likelihood that a reasonable investor would deem such information significant in the

total mix of information available to him or her.  Therefore, the Court finds that Plaintiff has

sufficiently pled that such statements are misleading under the PSLRA.

### 2.  Requisite State of Mind

Having found in part that the statements alleged in Plaintiff's Amended Complaint are

materially false and misleading, the Court now addresses whether Plaintiff has sufficiently pled

Defendants' scienter.  As stated infra, the Court must take a holistic approach in its inquiry into

scienter, considering the Amended Complaint in its entirety to determine "whether all of the

facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any

individual allegation, scrutinized in isolation, meets the standard."  Tellabs, 551 U.S. at 322; see

also Avaya, 564 F.3d at 273.  Plaintiff puts forward six indicia of Defendants' scienter in his

---

[1] For example, the statement from Defendants' March 26, 2010 Form 10-K disclosure that, "In the ordinary course of business, we are party to various . . . customs, employment and other legal actions incidental to our business . . . . In the opinion of management, the amount of ultimate liability with respect to these actions will not materially adversely affect our consolidated results of operations, financial condition or cash flows." (Am. Compl., ¶ 44). Such statements are distinguishable from later statements made by Defendants which include limiting language as to liability expected from pending legal matters, as in the following statement in the May 5, 2010 Form 10-Q issued by Defendants: "In the opinion of management, the amount of ultimate liability with respect to such actions that are currently pending will not materially adversely affect the consolidated results of operations, financial condition or cash flows of the Company." (Id., ¶ 54).

[2] These statements include: (1) a statement in Defendants' Form 10-K issued on March 26, 2010: "Based upon our evaluation, our principal executive officer and principal financial officer have concluded that our disclosure controls and procedures are effect as of December 31, 2009" (Am. Compl., ¶ 50); (2) May 5, 2010 Form 10-Q: stating that certifying officers Crain and Paglinco concluded that their disclosure controls and procedures were effective as of March 31, 2010 (Id., ¶ 56); (3) August 4, 2010 Form 10-Q: "[Crain and Paglinco] have concluded that our disclosure controls and procedures are effective as of June 30, 2010" (Id., ¶ 62); and (4) November 3, 2010 Form 10-Q: describing the Company's disclosure controls and stating that, based on an evaluation of said controls, "the Certifying Officers have concluded that our disclosure controls and procedures are effective as of September 30, 2010" (Id., ¶ 70).

[3] See, e.g., Defendants' May 31, 2011 statement submitted in their Form 10-K: "We have discontinued the practices that resulted in the charge for anticipated anti-dumping duty" (Id., ¶ 79).

Amended Complaint: (1) reports by three confidential witnesses with knowledge of Kid Brands'

operations—a former Distribution Manager at LaJobi, a former Sarbanes-Oxley Act ("SOX")

Compliance Consultant for Kid Brands and a former Sales and Forecast Demand Manager; (2)

the fact that the company violated U.S. Customs law and was issued fines; (3) Kid Brands'

admissions regarding senior management's direct involvement with all of its subsidiaries; (4)

Kid Brands' investigations into importing and staffing practices; (5) a legal dispute that emerged

subsequent to Mr. Bivona's termination from LaJobi; and (6) the fact that LaJobi, CoCaLo and

Kids Line, as three out of four wholly-owned subsidiaries of Kid Brands, are Kid Brands' core

business operations. (Pl. Opp'n Br., at 12-13 (citing Am. Compl., ¶¶ 9, 10, 57, 94, 95)).

Regarding scienter on the part of the Individual Defendants, Plaintiff claims that Crain and

Paglinco "had direct and supervisory involvement in the day-to-day operations of the Company"

and "were provided with or had unlimited access to copies of the Company's reports, press

releases, public filings, and other statements alleged by plaintiff to be materially misleading prior

to and/or shortly after these statements were issued and had the ability to prevent the issuance of

the statements or cause the statements to be corrected." (Am. Compl., ¶¶ 118-119).

    Defendants contend that the Amended Complaint fails to plead scienter against Kid

Brands under the PSLRA's heightened pleading standards since: (1) Plaintiff cannot rely on the

confidential witness allegations in their Amended Complaint as they are insufficiently pled; (2)

Plaintiff fails to plead scienter against an individual who made statements on behalf of Kid

Brands, and any arguments based on group pleading, collective scienter or "core operations"

doctrine without sufficiently pleading an individual's scienter must fail as a matter of law or are

inapplicable to this case; and (3) competing inferences of non-fraudulent intent are more

compelling. (Def. Kid Brands Br., at 12-27; Def. Kid Brands Reply Br., at 5-15). The Court will

address each of these arguments in turn, finding with Defendant that Plaintiff has not met the requirements of the heightened pleading standard in his Amended Complaint with respect to scienter on the part of Kid Brands and the Individual Defendants.

    a.  Confidential Witness Allegations

       Aside from Plaintiff's arguments based in the respective high-level positions of the Individual Defendants, their involvement with their subsidiaries, and the role of those subsidiaries in Kid Brands' core business, Plaintiff's allegations regarding scienter rely on the representations of confidential witnesses. Allegations sourced in confidential witnesses may support the scienter showing under the PSLRA, and "there is no requirement that [said witnesses] be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 146 (3d Cir. 2004). In describing the positions and the basis of the sources' personal knowledge, complaints must adequately describe "the duration of each [confidential witnesses'] employment, the time period which the [witness] acquired the relevant information, and how each [witness] had access to such information." Avaya, 564 F.3d at 263 (citing Chubb, 394 F.3d at 150). The fulfillment of those requirements is evaluated by assessing the "'detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.'" Id. (quoting Chubb, 394 F.3d at 147). If "anonymous source allegations are found wanting with respect to these criteria, then we must discount them steeply. This is consistent with Tellabs's teaching that 'omissions and ambiguities

count against inferring scienter' under the PSLRA's particularity requirements." Id. (quoting Tellabs I, 127 S. Ct. at 2511).

Plaintiff's first Confidential Witness ("CW1") is identified as a "former Distribution Manager at LaJobi from May 2000 through November 2010, [who] consistently handled shipments from both Chinese and Vietnamese vendors." (Am. Compl., ¶ 10). The extent of CW1's contributions to the allegations made in the Amended Complaint are as follows:

> The air of wrongdoing was so pervasive in the LaJobi distribution department that the customs violations did not surprise CW1 at all. CW1 noted that at all times during his/her tenure at LaJobi "there were rumors that things weren't on the up and up." CW1 had "a strange feeling that things weren't right" with regard to the Company's customs practices. With the "bits and pieces" that CW1 heard from other employees regarding the Company's illicit customs practices, CW1 was able to get an idea of how LaJobi treated imported goods and often thought to him/herself "why would someone do something like that? . . . why do something stupid?"

(Id.). Defendants argue that CW1's allegations are insufficient in that they are: vague; silent as to the dates on which alleged rumors were learned; silent as to the source of the alleged information; and fail to assert whether the Individual Defendants or anyone in particular beyond CW1 was alerted of said rumors or "strange feeling[s]." (Def. Kid Brands Br., at 22). The Court agrees that the allegations asserted by CW1 are insufficient under the Chubbs and Avaya criteria. While the Amended Complaint states the duration of CW1's employment at LaJobi, citing generally to rumors heard by him or her during his or her employment, it does not state how such information was accessed by CW1 in terms of the sources of that information and the reliability of said sources. The Court cannot assess the coherence and plausibility of the allegations due to their unclear origins and very general nature—"rumors," "strange feeling that things weren't right," reception of "bits and pieces" of information. Without a more particularized articulation of the nature of the wrongdoing attested to by CW1, the Court finds that Plaintiff's allegations sourced in CW1 does not support a scienter showing under the PSLRA. See, e.g., In re

Anadigics, Inc., Sec. Litig., 2011 U.S. Dist. LEXIS 112587, * 93-94 (Sept. 30, 2011)(finding that

confidential source allegations may be discounted where no reference is made to particular dates

on which material information was discovered and conveyed to management, and plaintiffs

relied instead on "vague references to 'hallway conversations' and 'daily production meetings'

presumably taking place during the Class period"); In re Intelligroup Sec. Litig., 527 F. Supp. 2d

262, 361 (finding in part that, where a confidential witness was not provided firsthand

information, that witness's allegations could not indicate a culpable state of mind on the part of

defendants).

Plaintiff's second Confidential Witness ("CW2") is "a former Sarbanes Oxley Act

('SOX') Compliance Consultant for Kid Brands." (Am. Compl., ¶ 16).  The scope of CW2's

contribution to Plaintiff's scienter allegations are as follows: "[CW2] noted that in his/her

experience LaJobi had been 'singularly uncooperative in complying with Sarbanes Oxley

requirements.'"  (Id.).  Plaintiff's Amended Complaint does not specify the duration of CW2's

employment at Kid Brands or the time period in which CW2 acquired the relevant information

regarding SOX compliance.  Further, it does not detail how CW2 had access to information

regarding non-compliance, and without any substantive allegations regarding how that non-

compliance related to the wrongdoing at Kid Brands' subsidiaries with respect to customs

violations, it is not clear to the Court how Kid Brands' non-cooperation with SOX requirements

is relevant for the allegations in Plaintiff's Amended Complaint.   Finally, without any facts

stated regarding the basis and reliability of the sources of CW2's information with respect to Kid

Brands' non-cooperation or any indication that the information obtained by CW2 was

communicated to Defendants, such information is deficiently pled under Avaya and must be

discounted by this Court.

Finally, Plaintiff identifies a third Confidential Witness ("CW3") as "a former Sales and Forecast Demand Manager," and states that exclusively "he/she could not track sales based upon specific products or specific customers because the Company utilized an archaic database system of Excel spreadsheets instead of a more detailed and more accurate enterprise resource planning (ERP) system." (Id.). The Court finds the allegations provided by CW3 deficient for the same reasons it found those provided by CW2 deficient, namely, Plaintiff fails to provide any information regarding: the duration of CW3's employment with Kid Brands; the time period during which the database information was obtained; the way in which such information became accessible to CW3; the basis and reliability of the sources of CW3's information; and the specific relevance of such information with respect to monitoring or obtaining information about Kid Brands' subsidiaries' customs violations. Therefore, the Court agrees with Defendants that the confidential witness allegations as pled are not adequately described and may be discounted.

### b. Individual or Corporate Scienter

Defendants argue that Plaintiff's Amended Complaint fails to plead scienter against an individual who made statements on behalf of Kid Brands, and they also argue that Plaintiff's attempts to assert collective or corporate scienter must fail under Third Circuit law. (Def. Kid Brands Br., at 16-20). Since the Court agrees that Plaintiff has not sufficiently pled scienter as to any individual defendant, including Defendants Crain and Paglinco, the Court's determination regarding the viability of pleading collective or corporate scienter following the Third Circuit's rejection of group pleading doctrine in Winer Family Trust will be definitive.

In Winer Family Trust, the Third Circuit was asked to consider, inter alia, whether plaintiff former shareholders of Pennexx Foods could assert liability on the part of individual defendant directors and officers of Pennexx and Smithfield Foods on the basis of said individual

defendants' "access to, control over, and ability to edit and withhold dissemination of Pennexx's press releases and SEC filings." 503 F.3d at 334-35. The Third Circuit defined group pleading doctrine as a "judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations. Under the doctrine, where defendants are insiders with such control or involvement, their specific connection to fraudulent statements in group-published documents is unnecessary. . . . Accordingly, the group pleading doctrine allows a plaintiff to plead that defendants made a misstatement or omission of a material fact without pleading particular facts associating the defendants to the alleged fraud." Id., at 335. After reviewing the purposes of the PSLRA and the reasoning in Tellabs regarding the substantial heightening of pleading requirements in securities class action lawsuits, the Third Circuit held that a "presumption of particularity is inconsistent with the PSLRA's requirement that scienter be pleaded with respect to 'each act or omission' by 'the defendant'. . . . The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions. . . . [T]he group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA." Id., at 335-37 (quoting 15 U.S.C. § 78u-4(b)).

However, while the Third Circuit has clearly rejected the group pleading doctrine, it has not definitively decided whether the close but distinguishable assertion of collective or corporate scienter is viable after the PSLRA and Tellabs. Collective or corporate scienter could, for example, be imputed to a corporation either through respondeat superior or agency theories of liability, or through an inference based on dramatic announcements or oversights that corporate officials could not but know to be false, even if no individual defendant can be named regarding

the concoction and dissemination of the fraud.  There is a Circuit split as to whether the

imputation of liability under traditional, common law understandings of tort liability are viable

even if group pleading doctrine has been rejected.  The Second, Sixth, Seventh and Ninth

Circuits have upheld some version of collective or corporate scienter absent the naming of

individual defendants in securities fraud actions, while the Fifth and Eleventh Circuits have

rejected the viability of such a scienter showing.  Since the Third Circuit has not yet definitively

ruled on the issue, Defendants ask the Court to follow the Fifth Circuit's approach to scienter in

Section 10(b) pleadings, requiring at least one individual corporate officer making any

misleading statement to have the requisite level of scienter.  (Def. Kid Brands Br., at 16-19).

After reviewing the relevant case law on collective and corporate scienter, including recent

decisions by the Third Circuit, the Court disagrees with Defendants that all forms of imputation

of liability to corporations available under tort law are no longer available to private securities

fraud plaintiffs after the enactment of the PSLRA, but nevertheless finds that Plaintiff's

Amended Complaint does not adequately plead scienter within the available scope of such

imputations.

Defendants encourage the Court to follow the Fifth and Eleventh Circuits in holding that

plaintiffs must plead that at least one individual acting on behalf of the corporation made a false

statement with the requisite state of mind.  See Southland Securities Corp. v. INSpire Insurance

Solutions, Inc., 365 F.3d 353, 366-67 (5th Cir. 2004); Phillips v. Scientific-Atlanta, Inc., 374 F.3d

1015, 1018 (11th Cir. 2004).  In Southland, corporate defendant INSpire Insurance Solutions, its

original parent company, Millers Mutual Fire Insurance Company, and various corporate officers

were alleged to have committed securities fraud in violation of Section 10(b), Rule 10b-5 and

Section 20(a) by engaging in a scheme to deceive investors about the company's performance for

the purpose of inflating the price of INSpire stock for their own financial benefit. Southland, 365
F.3d at 359-60. The court found that, for "purposes of determining whether a statement made by
the corporation was made by it with the requisite Section 10(b) scienter we believe it appropriate
to look to the state of mind of the individual corporate official or officials who make or issue the
statement . . . rather than generally to the collective knowledge of all the corporation's officers
and employees acquired in the course of their employment." Id., at 366. The Eleventh Circuit
also rejected collective scienter in Phillips, where, without addressing the validity of group
pleading doctrine, it held that "scienter must be found with respect to each defendant and with
respect to each alleged violation of the statute. . . . Although the plain language [of the PSLRA]
is less compelling with respect to alleging the scienter of each defendant, the statute does use the
singular term 'the defendant,' and we believe that the most plausible reading in light of
congressional intent is that a plaintiff, to proceed beyond the pleading stage, must allege facts
sufficiently demonstrating each defendant's state of mind regarding his or her alleged
violations." Phillips, 374 F.3d at1018.

However, the Second, Sixth, Seventh, and Ninth Circuits have approved the viability of
collective scienter doctrine while nevertheless upholding the strict pleading requirements of the
PSLRA. In Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, the Second
Circuit was asked to consider the circumstances under which a plaintiff could plead the requisite
scienter against a corporate defendant without successfully pleading scienter against a
specifically-named individual defendant. 531 F.3d 190, 192 (2nd Cir. 2008). In that case,
plaintiff Teamsters Local 445 had purchased bonds issued as asset-backed securities which were
secured by mortgage loans sold by defendant Dynex Capital's subsidiary, Merit Securities Corp.
Id. According to the complaint, after the bonds were issued, the value of the collateral began a

sharp decline when increasing numbers of borrowers defaulted on their mortgage loans, creating substantial losses for bond investors.  Id.  In October 2003, Dynex disclosed that it had understated repossession rates on the bond collateral, and in February 2005, plaintiff filed a securities fraud action for alleged violations of Sections 10(b) and 20(a), naming Dynex and Merit as corporate defendants as well as Thomas Potts and Stephen Benedetti, who served as the president and principal executive officer of Dynex and the president and CEO of Merit, respectively.  Id., at 193.  The district court held that plaintiff had failed to adequately plead scienter with respect to individual defendants Potts and Benedetti, but nevertheless found that scienter was adequately pled as to corporate defendants Dynex and Merit "because plaintiff's allegations constituted strong circumstantial evidence of recklessness, a sufficiently culpable mental state."  Id., at 194-95.  In reviewing the reasoning of the district court, the Second Circuit cautioned against "improperly conflat[ing] pleading rules and liability rules.  To prove liability against a corporation, of course, a plaintiff must prove that an agent of the corporation committed a culpable act with the requisite scienter, and that the act (and accompanying mental state) are attributable to the corporation."  Id., at 195.  The court found that when the defendant is a corporate entity, pursuant to the PSLRA,

> the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.  In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant.  But it is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant. . . . Congress has imposed strict requirements on securities fraud pleading, but we do not believe they have imposed the rule urged by defendants, that in no case can corporate scienter be pleaded in the absence of successfully pleading scienter as to an expressly named officer.

Id., at 195-96.

The Sixth Circuit considered the same question in <u>City of Monroe Employees Ret. Sys. v.</u> <u>Bridgestone</u>. 399 F.3d 651 (6th Cir. 2005). In that case, plaintiff purchased Firestone-Bridgestone common stock or American Depository Receipts for Bridgestone common stock, and brought a securities fraud action on its behalf and others similarly situated based on defendant Firestone-Bridgestone's alleged public attribution of known defective tire failures to consumers' failures to properly inflate or take care of their tires. <u>Id.</u>, at 656. A government investigation revealed corporate fault in the adhesion-boosting compound of the rubber used in the tires, and the company was fined by the National Highway Traffic Safety Administration, following which Firestone-Bridgestone instituted a recall which allegedly injured Firestone-Bridgestone's corporate image, brand, and financial performance. <u>Id.</u> The complaint then detailed a series of incidents which the company attempted to suppress information about, including various government investigations, foreign and domestic, regarding tire failures. <u>Id.</u>, at 657-664. On appeal, the Sixth Circuit reviewed the district court's granting of defendant Firestone-Bridgestone's motion to dismiss, <u>inter alia</u>, on grounds that plaintiff failed to sufficiently plead scienter on the part of the corporate defendants Firestone and Bridgestone as well as individual defendant Firestone CEO and Bridgestone Executive Vice-President. <u>Id.</u>, at 684. Without deciding the viability of group pleading doctrine, the court found that plaintiff's complaint failed to allege scienter as to any individual defendant, but nevertheless found that scienter could be imputed to Firestone and Bridgestone, and that, "while an individual officer's knowledge may be attributed to the corporation, liability for the corporation's act does not, absent independent evidence, generally flow from the corporation to the corporate officer." <u>Id.</u>, at 689-90.

On remand from the Supreme Court, the Seventh Circuit issued a much-cited opinion in

Tellabs II which held that scienter was sufficiently pled as to corporate defendant Tellabs in

conformity with the requirements of the PSLRA.  513 F.3d at 712.  Judge Posner found at least

three routes to pleading corporate scienter, two of which included traditional forms of imputing

liability under tort law: respondeat superior and agency liability.  See id., at 707-708 ("The

Supreme Court has declined to incorporate common law principles root and branch into section

10(b) of the Securities Exchange Act (and hence into Rule 10b-5), and specifically has rejected

aider and abettor liability.  But the doctrines of respondeat superior and apparent authority

remain applicable to suits for securities fraud.  Tellabs does not argue the contrary.")(citations

omitted).  With respect to the third route of liability, the court considered critical the question of

"how likely it [wa]s that the allegedly false statements . . . were the result of merely careless

mistakes at the management level based on false information fed it from below, rather than of an

intent to deceive or a reckless indifference to whether the statements were misleading."  Id., at

709.  The court then set forward a model hypothetical to gauge such a likelihood, utilized as a

standard in subsequent cases for imputing corporate scienter:

> [I]t is possible to draw a strong inference of corporate scienter without being able to
> name the individuals who concocted and disseminated the fraud.  Suppose General
> Motors announced that it had sold one million SUVs in 2006, and the actual number was
> zero.  There would be a strong inference of corporate scienter, since so dramatic an
> announcement would have been approved by corporate officials sufficiently
> knowledgeable about the company to know that the announcement was false. . . . The fact
> that a gamble—concealing bad news in the hope that it will be overtaken by good news—
> fails is not inconsistent with its having been considered, though because of the risk a
> reckless, gamble.

Id., at 710.  On this basis, the court found that it was exceedingly unlikely that the CEO of

Tellabs, at the top of the corporate pyramid, was unaware of problems at his company regarding

false and misleading statements concerning two major switching systems used in fiber optic

34

cable networks, specifically, projecting excessive demand for said switching systems when the fiber-optics bubble burst. Id., at 711.

In Glazer Capital Mgmt., LP v. Magistri, the Ninth Circuit considered the viability of pleading collective scienter when InVision Technologies, Inc. ("Invision"), its CEO, and its Chief Financial Officer were alleged to have violated Section 10(b) in their misstatements regarding doubts about the corporation's potential merger agreement with General Electric due to discovery of InVision's potential violations of the Foreign Corrupt Practices Act of 1997. 549 F.3d 736 (9th Cir. 2008). While the court generally found that corporate scienter relies heavily on the awareness of directors and officers that statements were fraudulent when made, it nevertheless found that, under certain facts, corporate scienter pleading was appropriate: "In Nordstrom, Inc. v. Chubb & Son, Inc., we touched on the issue [of collective scienter] indirectly in the context of an insurance dispute. 54 F.3d 1424 (9th Cir. 1995). . . . Nordstrom merely held that, on the facts of the case, it was impossible to allege corporate scienter without also implicating the directors and officers. Nordstrom does not foreclose the possibility that, in certain circumstances, some form of collective scienter pleading might be appropriate. For instance, as outlined in the hypothetical posed in [Tellabs II], there could be circumstances in which a company's public statements were so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publication." Id., at 744.

While the Third Circuit has not decided which approach it agrees with, it has indicated that it may be possible to plead scienter against a corporation without pleading scienter against an individual, but the facts alleged would need to be similar to those in Bridgestone and Tellabs II. Specifically, in City of Roseville Employees' Retirement Sys. v. Horizon Lines, Inc., the

court cited Judge Posner's hypothetical in Tellabs II and generalized that the alleged wrongdoing to so assert collective scienter would need be "extraordinary." 442 Fed. Appx. 672, 676 (3d Cir. 2011). In Horizon Lines, plaintiff retirement fund brought claims against a parent and subsidiary shipping company as well as individual defendants—executive and management officers at the company—for securities fraud arising out of alleged price fixing in Horizon's shipping business from the United States to Puerto Rico. Id., at 673. After finding that the plaintiff failed to sufficiently plead scienter as to the senior executives at Horizon, the Third Circuit considered "whether plaintiff may otherwise plead scienter as to Horizon, and if so, whether it has done so." Id., at 676. The Court noted that the district court, in finding that plaintiff had not so pled, applied the Fifth Circuit approach in Southland Securities: "Because there was no individual at Horizon who made actionable statements with scienter, the Court concluded that plaintiff had not pled scienter against Horizon." Id. However, the Third Circuit considered the approaches of the Sixth and Seventh Circuits in Bridgestone and Tellabs II as viable, and declined to definitively accept the Fifth Circuit individual defendant scienter requirement: "Although the price-fixing conspiracy at Horizon was long-lasting and affected a substantial portion of Horizon's business, the facts pled here are a far cry from those in Bridgestone or in the Seventh Circuit's hypothetical, and we need not decide whether we agree with either approach. Even if, however, it were possible to plead scienter against a corporation without pleading scienter against an individual, the facts alleged here would not survive a motion to dismiss." Id., at 676-77.

In this case, the Court likewise finds that, even if scienter could be pled against Kid Brands without pleading scienter against an individual, the facts alleged in Plaintiff's Amended Complaint do not survive a motion to dismiss under the Sixth and Seventh Circuit standards cited by the Third Circuit. The facts alleged regarding Defendants' conduct during the Class

Period may be divided into two parts: (1) the period from March 26, 2010 to late December

2010, when Kid Brands was purportedly notified of U.S. Customs' Focused Assessment of

LaJobi's customs violations; and (2) the period subsequent to notification in December 2010 and

August 16, 2011, the end of the Class Period.

With respect to statements made during the first period, Plaintiff presents very limited

indicia of scienter that could only rely on the Court's acceptance of a collective scienter theory:

no facts are alleged that any individual defendants were told about customs violations, no

investigations are alleged on the part of any individual—corporate officer or otherwise—into

such violations, and no legal disputes had begun following any terminations of LaJobi officers.

The only indicia Plaintiff offers are reports by confidential witnesses broadly indicating

wrongdoing, the fact that LaJobi, CoCaLo and Kids Line were Kid Brands' core business

operations, and Kid Brands' admissions in its SEC Form 10-K for the year ending December 31,

2009 that its senior management was directly involved in all of its subsidiaries ("[S]enior

corporate management, together with senior management of our subsidiaries, coordinates the

operations of all our businesses and seeks to identify cross-marketing, procurement and other

complementary business opportunities"). (Am. Compl., ¶ 15). The Complaint does not specify

what the nature of such senior management involvement consisted in, nor are Individual

Defendants' Crain and Paglinco specifically implicated in knowingly coordinating with Kid

Brands' subsidiaries' regarding the alleged customs violations. Therefore, the only viable

scienter theory applicable to the facts alleged in the first portion of the Class Period is one based

in recklessness and collective scienter, particularly since no concrete facts are offered regarding

any one individual's involvement or responsibility with respect to procurement, imports and

customs reporting. Based on the limited indicia presented in Plaintiff's Amended Complaint in

this portion of the Class Period, however, the Court does not find collective scienter sufficiently pled.  First, without any facts pled as to the exact nature of the misconduct at Kid Brands' subsidiaries between March and late December 2010—the underlying facts which formed the basis of the customs violation, the extent of the customs violations which must be "so obvious that the actor must have been aware of it," and the nature of any misclassifications—it is almost impossible for the Court to determine the degree of Kid Brands' deviation from the proper standard of care to make a "recklessness" determination.  See  S.E.C. v. The Infinity Group Co., 212 F.3d 180, 192 (3d Cir. 2000).  Second, without knowing the nature and extent of the violations beyond general allegations that the company was targeted for a Focused Assessment and that internal investigations revealed misclassifications, it is difficult for the Court to find this case analogous to the example presented in Tellabs II, where a strong inference of scienter could be made based on the dramatic nature of an announcement on customs violations that could not but have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.  The statements listed in Plaintiff's Amended Complaint leading up to December 2010—regarding the financial health of the company, the status of the internal controls of the company, and even the collaboration of corporate management between the parent and the subsidiary—are at worst misleading as to the full nature of the company's compliance with U.S. anti-dumping law and customs regulations.  There is no suggestion in the Amended Complaint that the company and its subsidiaries were thoroughgoingly non-compliant with such laws and regulations but nevertheless presented to the public that that they were in fact compliant in all respects.  Therefore, the Court finds the facts as asserted disanalogous to the scenarios presented under Circuit law which accepts variations of the collective scienter doctrine, and the Court rejects the viability of said doctrine to the facts as alleged here.

With respect to the indicia of scienter after Defendants were notified of the Focused Assessment in late December 2010, Plaintiff asserts that, in addition to the confidential witnesses' statements, Kid Brands' admissions regarding collaboration with subsidiaries, and the fact that three out of four subsidiaries constituted the core business operations of the company, Plaintiff adds the following facts: the company violated U.S. Customs law, was issued fines and a legal dispute emerged subsequent to Mr. Bivona's termination from LaJobi. (Pl. Opp'n Br., at 12-13). While the Third Circuit has accepted as viable core operation doctrine arguments with other indicia of scienter in a totality-of-circumstances test, the Court nevertheless finds that Plaintiff has not sufficiently pled collective scienter even after the company was notified of the Focused Assessment. See Avaya, 564 F.3d at 268-270. In this case, Plaintiff only alleges a single red flag alerting the Board of possible misconduct by LaJobi: the U.S. Customs decision to do a Focused Assessment of its subsidiary. The Amended Complaint does not give any indication of what notice, if any, Defendants had of any wrongdoing on the part of CoCaLo and Kids Line prior to the August 15 and 16, 2011 disclosures. (Am. Compl., ¶¶ 90-91). Even in the context of violations assessed against LaJobi, CoCaLo and Kids Line, the Amended Complaint does not allege the nature of the pervasiveness of said violations such that executive officers at the parent corporation would have been alerted to them based on their intertwining with the company's core operations.

In Avaya, the Third Circuit found scienter sufficiently pled in part because a corporate officer "did not simply make statements inconsistent with the existence of widespread and unusual discounting; he explicitly denied the existence of such discounting in response to repeated questions about pricing by analysts. . . . If the alleged discounting were minor or restricted to only a few products or customers, nonculpable ignorance might be the more likely

explanation. But . . . Shareholders' CWs allege widespread discounting involving many different product lines and accounts, including some of Avaya's largest clients." 564 F.3d at 269-70. While the Amended Complaint alleges violations at three out of four of Kid Brands' subsidiaries, it does not indicate whether such violations were "minor or restricted" within those subsidiaries, or if the misconduct was widespread. Further, Plaintiff's Amended Complaint does not indicate what, if any, internal mechanisms were in place to monitor either Kid Brands or its subsidiaries' compliance with U.S. anti-dumping laws or relevant foreign laws in its jurisdictions of operation. Neither does the Complaint allege any facts detailing Kid Brands' related-party transactions with LaJobi, CoCaLo and Kids Line, or the means by which information would have been transferred between parent and subsidiary so as to establish plausible Board awareness or negligent disregard of any misconduct. Finally, the Amended Complaint is devoid of factual allegations regarding who approved the incorrect payment of customs duties and whether any of the directors knew that the appropriate customs duties under federal anti-dumping law were not being paid. For example, no facts are pled regarding any meetings that occurred between members of the Board and employees of the subsidiaries or those who knew of the misconduct of subsidiary employees where any misconduct was reviewed or discussed. Without more specifically pled allegations regarding the extent of the notice, the breadth of the company's investigations and the scope of the misconduct within the core business of Kid Brands, and having discounted the allegations of the CWs as insufficiently pled and failing to provide clear support that is both specific and based in reliable sourcing with respect to awareness of misconduct by corporate management, the Court does not find a basis for a strong inference of scienter in the facts alleged. Nor does it find supportive of scienter Mr. Bivona's legal dispute against Kid Brands without additional facts alleged regarding his relationship, if any, with Kid

40

Brands or the Individual Defendants regarding notification of the alleged customs violations. This Court thus cannot make a strong inference based on the facts pled that any members of the Kid Brands Board had knowledge or were reckless about the violative activity of their subsidiaries, and Plaintiff has failed to meet its burden in showing that competing inferences of non-fraudulent intent are not as likely under Tellabs I.

Since the Court does not find sufficient support for collective scienter pleading, Plaintiff's Section 10(b) claims may only be deemed viable to the extent that they sufficiently plead scienter as to Individual Defendants Crain and Paglinco. Defendants argue that the pleading requirements under the PSLRA are not satisfied because: (1) "the Complaint contains no facts to even suggest—let alone give rise to a strong inference—that Mr. Crain knowingly made any false statement or that he acted recklessly with regard to the truth or falsity of his statements" (Def. Crain Br., at 1-2); and (2) "Plaintiff . . . offers only conclusory assertions that Mr. Paglinco, as chief financial officer and vice-president of Kid Brands Inc. . . . signed, pursuant to Section 302 of the Sarbanes-Oxley Act, a certification attesting that the Company's 2010 and early 2011 SEC filings fairly represented its financial condition despite 'kn[owing] or recklessly disregard[ing]' that subsidiaries of the Company had violated U.S. Customs laws." (Def. Paglinco Br., at 1-2).

Beyond asserting that the Individual Defendants' scienter is based in part on their high-level positions at Kid Brands, Plaintiff argues that specific facts are pled in his Amended Complaint as to said Defendants specifically, and they are as follows: (1) "[t]he Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by plaintiff to be materially misleading prior to and/or shortly after these [SEC] statements were issued and had the ability to

prevent the issuance of the statements or cause the statements to be corrected" (Am. Compl., ¶ 118); (2) "each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein" (Id., ¶ 119); and (3) all SEC Forms at issue were signed by Defendants Crain and Paglinco (Id., ¶ 118).  However, the Amended Complaint alleges no facts which single out either Defendant Crain or Defendant Paglinco regarding the nature of the knowledge or recklessness they possessed based on either the specific information regarding the customs violations they would have had access to based on their position within Kid Brands or any information they would have received based on specific events or witnesses that conveyed information to them.  The Court agrees with Defendants that, given the investigations initiated by the Board and the lack of any confidential witness, document or other factual source indicating that Defendants Crain, Paglinco, or anyone at the Company, knew about the customs violations earlier than their public disclosure, the most "plausible inference flowing from these facts is a non-culpable inference." See, e.g., Winer Family Trust, 503 F.3d at 328; In re Nice Sys., 135 F. Supp. 2d at 586 ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them").  Further, Plaintiff fails to assert motive or opportunity on the parts of the Individual Defendants beyond seeking the most profitable results for their company.  While "motive and opportunity" may "no longer serve as an independent route to scienter," "they are to be considered along with all the other allegations in the complaint. . . . Corporate officers always have an incentive to improve the lot of their companies, but this is not, absent unusual circumstances, a motive to commit fraud." Avaya, 564 F.3d at 277-78. Since no personal benefit is alleged  as to the Individual Defendants, or any other indicia beyond

incentive to ensure Kid Brands' success, Plaintiff's allegations as to said Defendants lack the overall factual support necessary to establish the heightened pleading requirements for scienter under the PSLRA.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff has failed to satisfy the heightened pleading requirements of the PSLRA for his securities fraud claims, and the Court accordingly grants Defendants' Motions to Dismiss without prejudice.  Plaintiff is granted leave to amend its complaint in a manner consistent with the strictures of this Opinion.  An appropriate order accompanies this Opinion.

DATED: March 7, 2012

_____
Jose L. Linares
United States District Judge

43