# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -x

SHAH RAHMAN, Individually and
on Behalf of All Others Similarly
Situated,

              Plaintiff,

      vs.

KID BRANDS, INC., BRUCE G.
CRAIN, GUY A. PAGLINCO,
RAPHAEL BENAROYA,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -x

:   Civil Action No. 11-cv-1624 (JLL)(MAH)

:   **ECF Case**

:   **Electronically Filed**

:   **Return Date:  October 1, 2012**

:   **Oral Argument Requested**

:

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS KID BRANDS, INC. AND RAPHAEL BENAROYA'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Andrew Muscato
Robert J. Del Tufo
Jay B. Kasner (admitted *pro hac vice*)
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Defendants Kid Brands and*
  *Raphael Benaroya*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS ...................................... 12

    A.    The Parties ................................................................................ 12

    B.    The Company's Good Faith Actions Upon Discovering Issues at
          LaJobi.......................................................................................... 14

    C.    The Initial Complaints .......................................................... 16

    D.    This Court's Decision Dismissing The Action Without
          Prejudice .................................................................................... 18

ARGUMENT ........................................................................................ 20

I.     THE COURT ALREADY DISMISSED AS A MATTER OF LAW
      THE CLAIMS CHALLENGING MISLEADING STATEMENTS
      REGARDING LAJOBI'S CUSTOMS INVESTIGATION........................ 20

II.    PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF
      SCIENTER AS TO THE COMPANY OR MR. BENAROYA .................. 20

    A.    The SAC Fails To Plead Scienter Against Kid Brands........... 20

         1.    Plaintiff's Confidential Witness Allegations Are
              Still Insufficient................................................................. 21

         2.    There Are No Confidential Witnesses Regarding
              The Customs Issues At CoCaLo Or Kids Line.............. 23

         3.    The LaJobi Confidential Witnesses Are
              Insufficient And Add Nothing To Pleading
              Scienter As To Defendants' Prior Knowledge of
              LaJobi's Customs Issues................................................. 24

         4.    The Confidential Witnesses Do Not Support
              Scienter As To Plaintiff's Product-Recall
              Allegations ...................................................................... 30

         5.    Plaintiff Fails To Plead Collective Scienter................... 31

i

      B.    The SAC Fails To Plead Scienter Against Defendant Benaroya .................................................................................. 33

III.    PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION WITH RESPECT TO THE SO-CALLED "RE-LABELING" OR PRODUCT RECALL CLAIMS ............................ 34

IV.    PLAINTIFF DOES NOT ADEQUATELY ATTRIBUTE THE ALLEGED MISSTATEMENTS TO EACH DEFENDANT ...................... 38

V.    PLAINTIFF'S CONTROL PERSON CLAIM AGAINST DEFENDANT BENAROYA MUST BE DISMISSED .............................. 39

CONCLUSION ................................................................................ 40

## TABLE OF AUTHORITIES

In re Alpharma Securities Litigation,
    372 F.3d 137 (3d Cir. 2004)........................................................... 32, 40

In re Anadigics, Inc., Securities Litigation,
    No. 08-5572 (MLC), 2011 U.S. Dist. LEXIS 112587(D.N.J. Sept. 30,
    2011)........................................................................................... 31

Automobile Industries Pension Trust Fund v. Textron, Inc.,
    No. 11-2106, 2012 U.S. App. LEXIS 11535 (1st Cir. June 7, 2012) ............... 22

In re Bio-Technology General Corporation Securities Litigation,
    No. 02-6048 (HAA), 2006 U.S. Dist. LEXIS 81268 (D.N.J. Oct. 26,
    2006), aff'd sub nom. In re Savient Pharmaceuticals, Inc. Securities
    Litigation, 283 F. App'x 887 (3d Cir. 2008) ...................................... 7, 23, 24, 27

California Public Employees' Retirement System v. Chubb Corp.,
    394 F.3d 126 (3d Cir. 2004)........................................................... passim

City of Roseville Employees' Retirement System v. Crain,
    No. 11-2919 (JLL), 2011 U.S. Dist. LEXIS 122560 (D.N.J. Oct. 24,
    2011)........................................................................................... 18, 33

City of Roseville Employees' Retirement System v. Horizon Lines, Inc.,
    442 F. App'x 672 (3d Cir. 2011) ..................................................... 32

Dura Pharmaceuticals, Inc. v. Broudo,
    544 U.S. 336 (2005) ...................................................................... 35, 36

Hawaii Ironworkers Annuity Trust Fund v. Cole,
    No. 3:10CV371, 2011 U.S. Dist. LEXIS 98760 (N.D. Ohio Sept. 1, 2011) ..... 12

Institutional Investors Group v. Avaya, Inc.,
    564 F.3d 242 (3d Cir. 2009)........................................................... 39

In re Intelligroup Securities Litigation,
    527 F. Supp. 2d 262 (D.N.J. 2007) .................................................. passim

<u>Israeli v. Team Telecom International, Ltd.</u>,
    No. 04-cv-4305 (PGS), 2006 U.S. Dist. LEXIS 73552 (D.N.J. Oct. 6,
    2006)..................................................................................................... 27, 28

<u>Janus Capital Group, Inc. v. First Derivative Traders</u>,
    131 S. Ct. 2296 (2011) ............................................................................ 11, 39

<u>Kanter v. Barella</u>,
    489 F.3d 170 (3d Cir. 2007)..................................................................... 18, 34

<u>Klein v. Autek Corp.</u>,
    No. 01-5751, 2004 U.S. Dist. LEXIS 29013 (D.N.J. June 30, 2004),
    <u>aff'd</u>, 147 F. App'x 272 (3d Cir. 2005) ............................................................ 38

<u>Lentell v. Merrill Lynch & Co.</u>,
    396 F.3d 161 (2d Cir. 2005).............................................................. 11, 35, 36

<u>LLDVF, L.P. v. Dinicola</u>,
    No. 09-1280 (JLL), 2010 U.S. Dist. LEXIS 82078 (D.N.J. Aug. 12,
    2010)........................................................................................................ 11, 35

<u>McKowan Lowe & Co. v. Jasmine, Ltd.</u>,
    No. 94-5522 (RBK), 2005 U.S. Dist. LEXIS 32164 (D.N.J. June 30,
    2005), <u>aff'd</u>, 231 F. App'x 216 (3d Cir. 2007)............................................ 11, 36

<u>National Junior Baseball League v. PharmaNet Development Group, Inc.</u>,
    720 F. Supp. 2d 517 (D.N.J. 2010) ................................................. 25, 31, 36, 37

<u>Rahman v. Kid Brands, Inc. ("Rahman I")</u>,
    No. 11-1624 (JLL), 2012 U.S. Dist. LEXIS 31406 (D.N.J. Mar. 8, 2012)
    (D.N.J. Mar. 8, 2012) .......................................................................... passim

<u>Rickenbach v. Wells Fargo Bank, N.A.</u>,
    No. 08-2687 (JBS/KMW), 2010 U.S. Dist. LEXIS 21161 (D.N.J. Mar. 8,
    2010)........................................................................................................ 7, 20

<u>In re Synchronoss Securities Litigation</u>,
    705 F. Supp. 2d 367 (D.N.J. 2010) ................................................................ 27

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007) ....................................................................... 22

In re Tellium, Inc. Securities Litigation,
    No. 02-cv-5878 (FLW), 2005 U.S. Dist. LEXIS 26332 (D.N.J. Aug. 26,
    2005)................................................................................... 36, 37

United States v. Rockwell Automation Inc.,
    30 Ct. Int'l Trade 1552 (2006).......................................................... 26

Winer Family Trust v. Queen,
    503 F.3d 319 (3d Cir. 2007)................................................. 4, 8, 20, 39

## STATUTES AND RULES

Fed. R. Civ. P. 9(b)........................................................................ 20, 22

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 .............. 1, 12

## OTHER AUTHORITIES

1 Laws of International Trade § 17:2 (2012) ........................................... 2

United States Department of Commerce Amended Final Determination of
Antidumping Duty Order:  Wooden Bedroom Furniture From the People's
Republic of China, 71 Fed. Reg. 67099 (November 20, 2006) .............................. 6

United States Department of Commerce Amended Final Results of
Antidumping Duty Administrative Review:  Wooden Bedroom Furniture
From the People's Republic of China, 72 Fed. Reg. 46957 (August 22, 2007)........ 6

Defendant Kid Brands, Inc. ("Kid Brands" or the "Company") and

individual defendant Raphael Benaroya respectfully submit this memorandum of

law in support of their motion to dismiss the Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

This motion addresses Plaintiff's third attempt to hold Kid Brands and

certain individuals liable for fraud where the Company itself (i) identified discrete

customs violations by certain of its subsidiaries, (ii) formed a special committee

("Special Committee") that retained outside counsel who conducted a thorough and

costly investigation into the matter, (iii) voluntarily self-reported the issues to U.S.

Customs and Border Protection ("U.S. Customs") and the U.S. Securities and

Exchange Commission ("SEC"), (iv) disclosed the problems and the resulting

financial impact to the public and (v) took steps to remedy the situation, including

terminating responsible employees.  The factors that this Court identified in

dismissing Plaintiff's First Amended Complaint ("FAC") for failure to comply

with the heightened pleading standards of the Private Securities Litigation Reform

Act ("PSLRA")[1] have not been addressed in Plaintiff's most recent pleading

---

[1] See Rahman v. Kid Brands, Inc., No. 11-1624 (JLL), 2012 U.S. Dist. LEXIS 31406 (D.N.J. Mar. 8, 2012) ("Rahman I").  Rahman I is attached as Exhibit A to the Certification of Andrew Muscato ("Muscato Certification") and is cited herein as "Rahman I at p_."  All references to "Ex. _" in this memorandum are to exhibits that have been appended to the Muscato Certification.

reiteration.  For the reasons discussed below, the SAC must be dismissed with prejudice.

Specifically, in March 2011, Kid Brands publicly disclosed that in preparation for a review by U.S. Customs Service known as a Focused Assessment,[2] the Company had discovered certain noncompliance with customs regulations at its LaJobi subsidiary, which is headquartered in Cranbury, New Jersey.  (SAC ¶¶ 8, 103, 106).[3]  In response, the Kid Brands board formed a Special Committee of non-management directors and retained outside counsel to conduct an investigation into the matter.  Id.  In the March disclosures, Kid Brands reported that the Special Committee's investigation had found instances at LaJobi in which incorrect anti-dumping duties were paid on products "imported from vendors in China."  (Id.).  In particular, the LaJobi customs violations involved "misidentifying" on customs forms the Chinese "manufacturer and shipper" of

---

[2]   A Customs Service Focused Assessment "seeks to determine the adequacy of an importer's internal controls, to ascertain the potential areas of risk of an importer's noncompliance with [Customs] laws and regulations, and to develop improved internal compliance policies and procedures for the future."  Rahman I at 5-6.  See also Steven W. Baker, Customs and Border Protection: Expectations for Corporate Compliance, in 1 Laws of Int'l Trade § 17:2 (2012) ("A Focused Assessment is not an enforcement audit, or a program intended to discover wrong doing, but an evaluation of a company's ability to comply with Customs requirements.").

[3]   The operative Second Amended Complaint is cited herein as "SAC ¶ _."  The SAC is attached as Exhibit B to the Muscato Certification.

certain wooden furniture, resulting in the payment of anti-dumping duties at a lower rate. Id. As a result of this, two senior executives of LaJobi had been immediately terminated. The Company had self-reported its findings to U.S. Customs and the SEC and kept those agencies apprised of the Company's progress in remedying the situation. Id.

The Company further disclosed in August 2011 that as a result of the LaJobi issues, the board voluntarily initiated a self-review, supervised by the Special Committee and conducted by outside customs counsel, of customs compliance practices at the Company's geographically dispersed subsidiaries: Kids Line LLC ("Kids Line") (headquartered in Los Angeles, California), Sassy, Inc. ("Sassy") (headquartered in Kentwood, Michigan) and CoCaLo, Inc. ("CoCaLo") (headquartered in Irvine, California). (SAC ¶ 126; Ex. C at pp. 3, 19). The Company reported that while its investigation was ongoing, based on a "sampling of customs filings" the Special Committee had identified discrete and unrelated instances at Kids Line and CoCaLo of "incorrect entries and invoices" that were being reviewed with the assistance of outside customs counsel. Id.

Even before these disclosures had been completed, Plaintiff commenced this putative securities class action essentially alleging, without any support, that certain directors and officers at Kid Brands must have known of these discrete and unrelated customs issues at the subsidiaries and failed to timely

3

disclose the problems.  On March 8, 2012, this Court dismissed the FAC because

of Plaintiff's failure to satisfy the stringent pleading standards of the PSLRA.

Rahman I at 43. This Court concluded, among other things, that Plaintiff failed to

sufficiently plead Defendants' scienter as to any statements challenged in the FAC.

See Rahman I at 24-25, 28, 37-38.  In particular, Plaintiff failed to establish

through particularized pleading that any of the Defendants had knowledge of the

discrete customs issues at these subsidiaries prior to their disclosure or had any

motive to conceal such customs violations.  See id. at 42 (holding that "given the

investigations initiated by the Board and the lack of any confidential witness,

document or other factual source indicating that Defendants . . . knew about the

customs violations earlier than their public disclosure, the most 'plausible inference

flowing from these facts is a non-culpable inference'") (quoting Winer Family

Trust v. Queen, 503 F.3d 319, 328 (3d Cir. 2007)).  Despite these deficiencies, the

Court allowed Plaintiff another opportunity to replead "in a manner consistent with

the strictures of this Opinion."  Rahman I at 43.

Now, in his third attempt to state a claim, Plaintiff essentially makes

three changes, none of which fixes the numerous deficiencies identified by the

Court:

In the first change, Plaintiff suddenly offers a new theory that is

neither coherent nor compelling and bears no connection to the voluntarily

4

disclosed customs violations at the Company's subsidiaries or Kid Brands' public statements on that subject.  Specifically, Plaintiff claims it has recently "uncovered" that LaJobi was obscuring "Made in China" labels at its New Jersey distribution center.  (SAC ¶¶ 2, 37-39).  Plaintiff offers no explanation as to what this conduct has to do with the filing of "incorrect entries and invoices with U.S. Customs"[4] that resulted in LaJobi paying "incorrect" anti-dumping duties which were at the gravaman of this action and that Plaintiff argued resulted in his stock losses.  Also, it is unclear how this alleged "re-labeling" could have operated as fraud given the extensive public disclosures that the Company's products are "primarily" manufactured in China.  (See, e.g., Ex. C at pp. 5, 13, 27, 90; Ex. D at pp. 14, 18; Ex. E at pp. 15, 20; Ex. F at pp. 13-14, 25, 79; see also SAC ¶ 25).

Plaintiff's new theory is nonsensical and based on a misunderstanding of anti-dumping laws and LaJobi's disclosed violations.  First, Plaintiff has alleged no facts which would permit this Court to infer that anti-dumping duties were assessed at LaJobi's Cranbury, New Jersey distribution center rather than, as is typical with imported goods, at the U.S. port of entry.  Indeed, as discussed infra at pp. 26-27, by the time the goods made it to the distribution center, they had already been "shipped from China" (SAC ¶ 38), cleared through the U.S. port of entry and

---

[4] See Rahman I at 3 (The FAC alleged "that Kid Brands' subsidiaries filed incorrect entries and invoices with U.S. Customs that included incorrect classifications of certain products imported by the subsidiaries").

anti-dumping duties had already been assessed and paid. <u>Second</u>, there is nothing in the Company's disclosures or any factual support in the SAC that the customs violations at LaJobi had anything to do with alleged "labels" that misrepresented the country of origin; rather, as disclosed, LaJobi's customs issues involved "misidentifying" on customs forms the manufacturer in China and, thereby, being assessed a lower anti-dumping rate.[5] (SAC ¶¶ 103, 106).

Plaintiff's second change is to throw in baseless accusations from an uncorroborated, anonymous source about the selling of re-called products. Again, this has nothing to do with customs or Plaintiff's alleged losses. (SAC ¶¶ 44-46).

Finally, Plaintiff adds Raphael Benaroya as a defendant, but makes no specific allegations against him. Mr. Benaroya was an outside director of the Company who is not alleged to have served as interim Chief Executive Officer

---

[5]   This Court may take judicial notice of anti-dumping regulations published by the United States Department of Commerce which ascribe to different manufacturers in China different anti-dumping duties. <u>See</u> Exs. G, H, I. For example, one manufacturer in China may have a duty rate of 7.24% while another may be subjected to a much higher rate of 15.78%. <u>See</u> Ex. H, United States Department of Commerce Wooden Bedroom Furniture Antidumping Duty Order, 71 Fed. Reg. 67099, 67100 (Nov. 20, 2006). And, a Chinese manufacturer not included on the list could have a rate as high as 216.01%. <u>See</u> Ex. I, 72 Fed. Reg. 46957, 46964 (Aug. 22, 2007). As the Company disclosed, the customs issue at LaJobi involved certain instances in which "incorrect import duties were applied on certain wooden furniture imported from vendors in China, resulting in a violation of anti-dumping regulations." (SAC ¶¶ 103, 106; <u>see also</u> Exs. K, N). LaJobi's anti-dumping violation related to identifying an incorrect Chinese manufacturer with a lower anti-dumping rate and not, as Plaintiff claims, alleged "re-labeling" to "obscure" the country of origin.

6

until September 2011 (SAC ¶ 28) – well <u>after</u> the discovery and disclosures of the

discrete and unrelated customs violations and <u>after</u> the end of the putative class

period.  (SAC ¶ 1 (class period until August 16, 2011)).  There is absolutely no

basis for naming Mr. Benaroya in this action as there are no statements attributed

to him and he is not alleged to have known or had any involvement in the discrete

customs violations at Kid Brands' subsidiaries that were disclosed by the Company.

Simply put, Plaintiff's SAC does not just "fall[] short of this Court's

rather explicit roadmap," but strays entirely from the Court's direction.  <u>See</u> <u>In re</u>

<u>Bio-Tech. Gen. Corp. Sec. Litig.</u>, No. 02-6048 (HAA), 2006 U.S. Dist. LEXIS

81268, at *43 (D.N.J. Oct. 26, 2006) (dismissing second amended complaint with

prejudice because plaintiff failed to rectify the scienter deficiencies from his earlier

pleading), <u>aff'd</u>, <u>sub nom</u>. <u>In re Savient Pharms., Inc. Sec. Litig.</u>, 283 F. App'x 887

(3d Cir. 2008).  Accordingly, the SAC should be dismissed for the following

reasons:

- **Plaintiff Does Not Plead Any Actionable Statement or Omission that Was
  False Regarding LaJobi's Customs Investigation (<u>Infra</u> p. 20).**

To the extent Plaintiff is attempting to rehash his argument that the

LaJobi customs investigation should have been disclosed earlier (SAC ¶¶ 13, 131,

135, 141, 151), this has already been expressly rejected by this Court as a matter of

law in <u>Rahman I</u> and should be dismissed again.  <u>See</u> <u>Rahman I</u> at 17-18; <u>see also</u>

<u>Rickenbach v. Wells Fargo Bank, N.A.</u>, No. 08-2687 (JBS/KMW), 2010 U.S. Dist.

LEXIS 21161, at *12-14 (D.N.J. Mar. 8, 2010) (rejecting plaintiffs' attempt to reargue legal issues previously decided by the Court based on law of case doctrine).

- **Plaintiff Fails To Allege A Strong Inference Of Scienter (Infra pp. 20-34).**

   Plaintiff does not cure the scienter pleading deficiencies and fails to demonstrate (as required by the PSLRA) particularized facts giving rise to a "strong inference" that the Company or Mr. Benaroya acted with the required state of mind.  See Rahman I at 11-12 (the PSLRA requires plaintiffs to specify "the role of each defendant, demonstrating each defendant's involvement in the misstatements and omissions") (citing Winer Family Trust, 503 F.3d at 335-36). In Rahman I, "Plaintiff's allegations regarding scienter rel[ied] on the representations of confidential witnesses." Id. at 25-26.  This Court analyzed each of Plaintiff's confidential witnesses and found them based on statements that were "very general in nature" such as "rumors" and "a strange feeling that things weren't right." Id.

   Now, in the SAC, three out of the six confidential witnesses ("CWs") essentially parrot the same CW allegations from the FAC that were already explicitly rejected by this Court.  See, e.g., (Compare SAC ¶¶ 42, 53, 82 with Rahman I at 26-28).[6]  With respect to the claims regarding customs violations at

---

[6]   For no apparent reason, the SAC confusingly renumbers the CWs:  Former CW1 in the FAC appears to be labeled CW3 in the SAC.  Former CW2 is now

*(cont'd)*

8

Kids Line or CoCaLo, there is not a single allegation by any CW about the customs issues at these subsidiaries.  Indeed, the SAC contains no confidential witnesses from CoCaLo and the only CW from Kids Line, CW6, irrelevantly states that he was "recently terminated," that the Company allegedly failed to "honor his employment contract" and that he is allegedly suing the Company.  (SAC ¶ 50).

None of the LaJobi CWs are alleged to have:  (i) personal knowledge concerning any of the Defendants' involvement, especially Kid Brands' outside director Mr. Benaroya, with the LaJobi subsidiary's customs issues, (ii) been privy to any customs information at LaJobi or (iii) reviewed any of LaJobi's customs invoices or had any association with LaJobi's reporting of goods to U.S. Customs. For example, CW2 allegedly did not work at LaJobi until June 2011 (SAC ¶ 32), months after the customs violations at LaJobi were discovered and disclosed.

Rather, CW2 and CW1 make insufficiently vague allegations that on some unspecified dates they took products from the New Jersey distribution center and allegedly added unspecified "labels" to boxes by attaching white and yellow stickers.  (SAC ¶¶ 38-39); In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262, 290 (D.N.J. 2007) (failure of confidential source to "describe supporting events in detail" renders source "irrelevant").  Plaintiff does not specify what was stated on

_____

(cont'd from previous page)
CW4 in the SAC and former CW3 is now CW5 in the SAC.  The new CWs in the SAC are CWs 1, 2 and 6.

9

these alleged "labels," perhaps because the more obvious inference is that they were innocuous inventory labels that are customarily used in a distribution center. Plaintiff also misunderstands the LaJobi customs violations and wrongly speculates that the alleged labels had "obscured" "Made in China" labels and somehow duped U.S. Customs officials in order to "circumvent" anti-dumping duties. (SAC ¶¶ 39, 138). Significantly, however, Plaintiff does not tie this newly alleged conduct to the actual customs issues at LaJobi that the Company investigated and disclosed. (SAC ¶ 103). Plaintiff also tellingly does not allege that U.S. Customs officials were ever shown these alleged labels or told that LaJobi's products were not from China. And, indeed, Plaintiff's allegations are (i) undermined by the Company's consistent public disclosures that its products are "primarily" manufactured in China (Exs. C, D, E, F; SAC ¶ 25 (products made "predominately in China")) and (ii) illogical given that the alleged "re-labeling" purportedly occurred at the New Jersey distribution center <u>after</u> the goods were shipped from China, passed through the port of entry and anti-dumping duties had already been assessed and paid.

- **Plaintiff Fails To Adequately Plead Loss Causation (<u>Infra</u> pp. 34-38).**

Plaintiff's claims should also be dismissed for the separate and independent reason that they fail to adequately allege loss causation – <u>i.e.</u>, that "the decline in the stock price was caused by the market's discovery of defendant's fraud." <u>Intelligroup</u>, 527 F. Supp. 2d at 295. Importantly, Plaintiff does not (and

cannot) point to a single corrective disclosure that revealed publicly the allegations of misconduct that Plaintiff now complains of in his SAC.  See McKowan Lowe & Co. v. Jasmine, Ltd., No. 94-5522 (RBK), 2005 U.S. Dist. LEXIS 32164, at *28 (D.N.J. June 30, 2005) (no loss causation absent public disclosure of alleged fraud), aff'd, 231 F. App'x 216 (3d Cir. 2007).

Specifically, although Plaintiff attributes his losses to the supposed truth being revealed about the customs violations in the March and August 2011 disclosures (SAC ¶ 165), those disclosures are entirely silent as to Plaintiff's newly asserted theories of purported "re-labeling" and the supposed selling of recalled products.  Again, Plaintiff fails to link this alleged misconduct with the customs violations that were disclosed in March and August of 2011 that allegedly formed the basis of Plaintiff's supposed stock losses.  (SAC ¶ 165).  See LLDVF, L.P. v. Dinicola, No. 09-1280 (JLL), 2010 U.S. Dist. LEXIS 82078, at *26 (D.N.J. Aug. 12, 2010) (Linares, J.) (explaining that to establish loss causation, a plaintiff must allege that "the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security") (quoting Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005)).

- **Plaintiff Does Not Adequately Attribute the Alleged Misstatements to Each Defendant (Infra pp. 38-39).**

Defendants may not be held liable for statements they did not make. See Janus Capital Grp., Inc. v. First Deriv. Traders, 131 S. Ct. 2296, 2299 (2011).

As the United States Supreme Court recently made clear in <u>Janus</u>, a party is deemed to have "made" a particular statement only where it has "ultimate authority over the statement, including its content and whether and how to communicate it." <u>Id.</u> at 2302; <u>see also</u> <u>Haw. Ironworkers Annuity Trust Fund v. Cole</u>, No. 3:10-cv-371, 2011 U.S. Dist. LEXIS 98760, at *7-12 (N.D. Ohio Sept. 1, 2011) (applying <u>Janus</u> to individual defendants).  The SAC fails to directly attribute each of the challenged statements to each Defendant in derogation of this controlling authority. As to Mr. Benaroya, he is not alleged to have been an interim executive until <u>after</u> the class period and was not alleged as a director to be a "maker" of any statements.

- **Plaintiff's Control Person Claim Against Defendant Benaroya Fails (<u>Infra</u> pp. 39-40).**

Finally, Plaintiff's claim for control person liability against Mr. Benaroya under Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78t(a), should also be dismissed.  Not only has Plaintiff failed to allege a primary violation of the securities laws, <u>see, e.g.,</u> <u>Rahman I</u> at 14, but he also fails to allege that Mr. Benaroya culpably participated in the alleged fraud or had sufficient control during the purported class period.

## <u>SUMMARY OF FACTUAL ALLEGATIONS</u>

### A.    <u>The Parties</u>

Plaintiff Shah Rahman purports to have purchased shares of Kid Brands common stock during the purported class period.  (SAC ¶ 24).

Kid Brands, a wholesaler of infant and juvenile products, is a New Jersey corporation with its corporate headquarters in New Jersey. Id. at ¶ 25. It operates through a number of brand names and geographically dispersed wholly-owned subsidiaries that have distribution centers throughout the United States, including: (i) LaJobi, which is headquartered in Cranbury, New Jersey, (ii) CoCaLo, which is headquartered in Irvine, California, (iii) Kids Line, which is headquartered in Los Angeles, California and (iv) Sassy, which is headquartered in Kentwood, Michigan. (Ex. C, at pp. 3, 19).[7]

Kid Brands openly discloses and consistently does so in its public filings that its products are manufactured "primarily" in China. See Exs. C, D, E, F; see e.g., Ex. E, Kid Brands' Form 10-Q for the quarterly period ended Sept. 30, 2010 at p. 15 ("approximately 74% of the Company's dollar volume of purchases was attributed to manufacturing in . . . China"); SAC ¶ 25 ("The Company's products are manufactured predominately in China.").

Defendant Crain served as the President and CEO of Kid Brands during the putative class period. (SAC ¶ 26). Defendant Paglinco is the Company's Vice President and Chief Financial Officer. Id. at ¶ 27.

---

[7]   This Court may take judicial notice of documents filed with the SEC. See, e.g., Intelligroup, 527 F. Supp. 2d at 273.

Defendant Benaroya was an outside director and Chairman of the Board during the putative class period; however, Mr. Benaroya was not appointed as interim Chief Executive Officer until September 2011 – after the end of the putative class period and after the disclosures were made that Plaintiff contends revealed the alleged fraud. Id. at ¶ 28. There are no allegations attributing any of the challenged statements to Mr. Benaroya or specifying any prior knowledge of customs violations that he had as an outside director of Kid Brands before they were discovered and disclosed. In fact, none of the alleged CWs (i) names Mr. Benaroya, (ii) attests to having ever met or worked with Mr. Benaroya or (iii) claims that Mr. Benaroya was involved in the Company's subsidiaries' reporting of import duties or in the discrete customs issues that the Company self-investigated and voluntarily disclosed to U.S. Customs and the SEC. In short, there is absolutely no basis for why Mr. Benaroya is named in this action.

**B.      The Company's Good Faith Actions Upon Discovering Issues at LaJobi**

On March 15, 2011, Kid Brands issued a press release incorporated into a Form 8-K filed with the SEC disclosing that as a result of responding to a Customs Service Focused Assessment, it had become aware of certain potential problems involving LaJobi's practices with imports from China. (SAC ¶ 103; Ex. J). Specifically, the press release disclosed, among other things, that:

- The board had become aware of potential issues regarding customs duties paid by LaJobi for certain imports from China;

- The board had initiated an investigation and retained outside counsel to independently review the conduct of employees at Kid Brands' LaJobi subsidiary under the supervision of a special committee of the board;

- On the basis of the investigation, the board had concluded that there was misconduct by certain LaJobi subsidiary employees in connection with misidentifying on customs forms the manufacturer and shipper of products imported from China that resulted in incorrect payments of anti-dumping duties;

- Effective immediately, two high-ranking LaJobi employees were being terminated; and that

- the investigation was ongoing. Id.; (see also SAC ¶¶ 106, 114).

These disclosures were promptly supplemented sixteen days later in the Company's annual 10-K filing. (Ex. F). The Company reported a charge of $6,860,000 (the amount of customs payments anticipated to be owed), plus approximately $340,000 in interest. Id. at 20, 26. It further disclosed that additional penalties and interest could be assessed by U.S. Customs. Id.

On August 15, 2011, the Company voluntarily announced that as a result of the LaJobi issues, the board had authorized a broader review of the customs practices at Kid Brands' non-LaJobi subsidiaries. (SAC ¶ 126, Ex. K). This voluntary self-review involved the evaluation of a "sampling of customs filings," whereby the Special Committee with the aid of outside customs counsel determined that there were "incorrect entries and invoices" related to incorrect

15

descriptions, classifications and valuations of certain products imported by

subsidiaries, CoCaLo and Kids Line.  Id.  Unlike with LaJobi, these issues were

not attributed to misconduct by any executives at these subsidiaries.  (Ex. K at 30).

## C.    **The Initial Complaints**

Within a week after Kid Brands issued its March 15, 2011 press

release disclosing that it had discovered customs issues at LaJobi and was

rectifying the situation, Plaintiff filed its first complaint.  (Ex. L).[8]  The complaint

effectively relied on nothing but Kid Brands' own disclosures.

Thereafter, on September 26, 2011, Plaintiff filed the FAC that

essentially asserted that the Company's investigation into customs issues at its

subsidiaries should have been disclosed earlier.  (Ex. M).  In particular, Plaintiff

alleged that Kid Brands' disclosures in 2010 were false and misleading because

they did not disclose that the Company received notice of a Focused Assessment

with respect to LaJobi's customs issues and was investigating misconduct at the

subsidiary.  Plaintiff argued that the alleged less than three month delay from

receiving notification of the impending Focused Assessment and its disclosure on

March 15, 2011, rendered prior Kid Brands' disclosures false and misleading.

---

[8]    In addition to Messrs. Crain and Paglinco, the original complaint also named all
of Kid Brands' board of directors as defendants.  However, these individuals,
except Mr. Benaroya, were not named as defendants in the FAC.  Mr. Benaroya
was subsequently voluntarily dismissed.  (D.E. 26).

Plaintiff also claimed that disclosures as early as March 2010 were false and misleading even though they were nine months before the Company received the notice of an impending Focused Assessment in December 2010 and first began investigating LaJobi's customs issues.[9]

In addition, Plaintiff alleged that the Company's 2011 disclosures were false and misleading because they did not discuss the customs issues that the Company discovered as a result of its self-initiated investigation at CoCaLo and Kids Line.  While Plaintiff alleged that the customs issues at CoCaLo and Kids Line should have been disclosed earlier than August 15, 2011, Plaintiff alleged no facts establishing that anyone making statements on behalf of Kid Brands knew of any customs issues at these subsidiaries and fraudulently concealed this information.  Plaintiff puts forth no motive for why this information would be concealed (such as there were no allegations of insider trading).  To the contrary,

---

[9]    The investigation also reported issues with a LaJobi vendor related to imports from Asia.  As alleged in the FAC, previous SEC filings by Kid Brands reported that its LaJobi subsidiary had been making payments of specific amounts to L&J Industries, a company affiliated with the then-president of LaJobi, Lawrence Bivona, for quality control inspections and other services in Asia.  (FAC ¶¶ 49, 51; SAC ¶¶ 47-49).  The Company's 10-K reported that further investigation had revealed that some of the funds were being paid directly by LaJobi to individuals in Asia instead of through L&J Industries, although the 10-K noted that the amounts disclosed as paid were correct.  The 10-K disclosed that the practices regarding L&J Industries and payments to individuals had been discontinued and that corrective measures were being pursued.  (Ex. F at 27.)

the strong inference to be drawn from the FAC was that the Company had

discovered problems, made a thorough and timely investigation, took corrective

action and disclosed the results once known.[10]

### D.     This Court's Decision Dismissing The Action Without Prejudice

On March 8, 2012, this Court dismissed this action, without prejudice,

concluding that "Plaintiff's Amended Complaint [was] deficient in its allegations

under the heightened pleading requirements of the PSLRA." Rahman I at 13-14.

Although some of the elements of a claim had been pled, the FAC failed to plead

with particularity the necessary element of either individual or collective scienter.

See Rahman I at 28, 40-43.  The Court concluded, among other things:

- The CWs' allegations are insufficient:  This Court concluded that the CW
  allegations in the FAC were deficient and should be discounted:

  - CW1- The Court held that it "cannot assess the coherence and
    plausibility of the allegations" relating to CW1 due to, among

---

[10]  In a related derivative action that was also dismissed, this Court observed that
the board of directors, which included Mr. Benaroya, "did take actions to
address the [customs] misconduct," including, among other things, hiring an
outside law firm to conduct an independent investigation, establishing a Special
Committee to conduct an internal investigation, taking disciplinary actions by
terminating senior LaJobi executives, and publicly disclosing to shareholders
and the public the nature of the misconduct and the extent of losses it suffered
as a result of that misconduct.  See City of Roseville Emps.' Ret. Sys. v. Crain,
No. 11-2919 (JLL), 2011 U.S. Dist. LEXIS 122560, at *19-20 (D.N.J. Oct. 24,
2011).  This Court observed that such actions were entirely "appropriate and
'appear to be precisely the types of actions an independent board exercising
valid business judgment should take when made aware of a serious problem.'"
Id. (quoting Kanter v. Barella, 489 F.3d 170, 181 (3d Cir. 2007)).

other things, their (i) unclear origins, (ii) very general nature, such as relying on "rumors," and "a strange feeling that things weren't right," and (iii) reception of "bits and pieces" of information.  (<u>Rahman I</u> at 26).

o <u>CW2</u>- The Court held that CW2's allegations about LaJobi being "uncooperative" in complying with Sarbanes Oxley Act requirements were deficient as they did not specify (i) the time period CW2 acquired the information, (ii) how CW2 had access to the information, (iii) how that alleged non-cooperation "related to the wrongdoing at Kid Brands' subsidiaries with respect to customs' violations," and (iv) whether such information was communicated to Defendants. <u>Id.</u> at 27.

o <u>CW3</u>- The Court held that CW3's allegations about the Company's "archaic data base system of Excel spreadsheets" were deficient as they did not, among other things, provide (i) information regarding the duration of CW3's employment, (ii) the time period during which the database information was obtained, (iii) the way in which such information became accessible to CW3, (iv) the basis and reliability of the sources of CW3's information, and (v) "the specific relevance of such information with respect to monitoring or obtaining information about Kid Brands' subsidiaries' customs violations." <u>Id.</u> at 28.

- <u>Collective scienter was not pled</u>:  This Court concluded that collective scienter was insufficiently pled because, among other things, the FAC did not describe "pervasive" misconduct and was "devoid of factual allegations regarding who approved the incorrect payment of customs duties and whether any of the directors knew that the appropriate customs duties under federal anti-dumping law were not being paid." <u>Id.</u> at 40.  This Court provided an extensive analysis of the numerous pleading deficiencies relating to Plaintiff's failure to plead collective scienter. <u>See id.</u> at 28-43.

- <u>Most plausible inference was non-culpable</u>:  This Court held that it "agrees with Defendants that, given the investigations initiated by the Board and the lack of any confidential witness, document or other factual source indicating that Defendants Crain, Paglinco, or anyone at the Company, knew about the customs violations earlier than their public disclosure, the most plausible inference flowing from these facts is a non-culpable inference." <u>Id.</u> at 42.

## ARGUMENT[11]

### I.   THE COURT ALREADY DISMISSED AS A MATTER OF LAW THE CLAIMS CHALLENGING MISLEADING STATEMENTS REGARDING LAJOBI'S CUSTOMS INVESTIGATION

This Court held in Rahman I that Defendants had no duty to disclose the LaJobi Customs Assessment and investigation earlier than its March 15, 2011 disclosure. Rahman I at 17-18. This Court applied settled Third Circuit law and concluded that Defendants' disclosure of the LaJobi investigation was "sufficient" and the timing of the disclosure did not make any prior disclosures misleading. Id. (citing Winer Family Trust, 503 F.3d at 329). Based on the Court's ruling, to the extent that Plaintiff is attempting to re-allege this claim (see, e.g., SAC ¶¶ 13, 131, 135, 141, 151), it should again be dismissed under the law of the case doctrine. See Rickenbach, 2010 U.S. Dist. LEXIS 21161, at *13-14 (applying law of case doctrine to reject plaintiff's attempt to reargue claims rejected in earlier opinion).

### II.   PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER AS TO THE COMPANY OR MR. BENAROYA

#### A.   The SAC Fails To Plead Scienter Against Kid Brands

For the same reasons that the Court dismissed Plaintiff's earlier pleadings in Rahman I for failure to plead a strong inference of scienter against

---

[11] The standards applicable to this motion are set forth in detail in Rahman I. See Rahman I at 9-12. As discussed below, the SAC fails to satisfy the heightened pleading requirements under the PSLRA and Federal Rule of Civil Procedure 9(b) articulated in the Court's earlier opinion.

Kid Brands under the PSLRA, see Rahman I at 24-43, it should do so again here.
As set forth below, Plaintiff fails to adequately plead scienter with respect to any of
his claims involving (i) the certain customs issues the Company investigated and
voluntarily disclosed at CoCaLo and Kids Line, (ii) separate and discrete anti-
dumping duty issues the Company investigated and voluntarily disclosed at LaJobi
or (iii) the new product recall allegations.

### 1.   Plaintiff's Confidential Witness Allegations Are Still Insufficient

This Court in Rahman I explained that pursuant to the PSLRA's
heightened pleading requirements and Third Circuit law, it is required to evaluate
the "'detail provided by the confidential sources, the sources' basis of knowledge,
the reliability of the sources, the corroborative nature of other facts alleged,
including from other sources, the coherence and plausibility of the allegations, and
similar indicia.'" Rahman I at 25 (quoting Cal. Pub. Emples'. Ret. Sys. v. Chubb
Corp., 394 F.3d 126, 147 (3d Cir. 2004)).  If "'anonymous source allegations are
found wanting with respect to these criteria'" then the Court "'must discount them
steeply.'" Rahman I at 25 (citation omitted); Intelligroup, 527 F. Supp. 2d at 290
("[F]ailure to meet [Chubb's] requirements with respect to each and every
confidential source the plaintiff relies upon, renders that source irrelevant . . . .").

According to this Court, this stringent analysis "is consistent with
Tellabs's teaching that 'omissions and ambiguities count against inferring scienter'

21

under the PSLRA's particularity requirements." <u>Rahman I</u> at 25-26 (quoting

<u>Tellabs, Inc. v. Makor Issues & Rights. Ltd.</u>, 551 U.S. 308, 326 (2007)).  Moreover,

where, as here, Plaintiff lacks documentary evidence, "reliance on confidential

sources to supply the requisite particularity for their fraud claims . . . assumes a

heightened importance." <u>Chubb</u>, 394 F.3d at 148.

      Plaintiff merely repeats verbatim a recitation from the same three

confidential witnesses as before, CW3, CW4, and CW5, and tacks on three more

confidential witnesses, CW1, CW2 and CW6, that add nothing with respect to the

scienter pleading deficiencies that this Court specified at length in <u>Rahman I</u> –

namely, the lack of sufficiently particularized facts demonstrating that any

Defendant or individual who made statements on behalf of the Company knew,

much less intended to fraudulently conceal, the disclosed customs violations at Kid

Brands' subsidiaries.  <u>See</u> <u>Rahman I</u> at 42.  Nor do these added CWs provide a

strong inference of scienter in regards to Plaintiff's new recalled-product claims.

As the Third Circuit made clear in <u>Chubb</u>, "[t]he sheer volume of confidential

sources cited cannot compensate for [pleading] inadequacies" and "[c]obbling

together a litany of inadequate allegations does not render those allegations

particularized in accordance with Rule 9(b) or the PSLRA."  394 F.3d at 155; <u>see</u>

<u>also</u> <u>Auto. Indus. Pension Trust Fund v. Textron, Inc.</u>, No. 11-2106, 2012 U.S. App.

LEXIS 11535, at *5-6, *14-16 (1st Cir. June 7, 2012) (affirming dismissal where

plaintiff relied on twenty-three confidential witnesses because "[r]ead closely" the "factual proffers . . . are considerably weaker in offering any direct evidence of guilty knowledge or fraudulent intent").

### 2.   There Are No Confidential Witnesses Regarding The Customs Issues At CoCaLo Or Kids Line

In Rahman I, this Court concluded that Plaintiff had failed to plead a strong inference of scienter by alleging particularized facts that Kid Brands or any of the Individual Defendants had prior knowledge of customs violations at CoCaLo and Kids Line and actively concealed the information.  See Rahman I at 39-40. Plaintiff's SAC adds no new allegations with respect to this pleading deficiency.

First, there continues to be no confidential witnesses from the CoCaLo subsidiary, headquartered in Irvine, California.  (See SAC ¶¶ 31-36). Plaintiff has plead no specific facts with respect to the customs issues at CoCaLo.

Second, as to Kids Line, which is headquartered in Los Angeles, Plaintiff adds only vague statements from a new CW6, a purported "packaging designer," that he was terminated from Kids Line and that he is suing the subsidiary for allegedly not "honor[ing] his employment contract." (SAC ¶¶ 36, 50).  Putting aside that the Company is not aware of such suit, CW6's assertions are obviously insufficient to plead a strong inference of scienter, especially given the lack of "specific relevance" of this CW6 to the customs violations at Kids Line purportedly at issue in this action.  See Rahman I at 28; Bio-Tech. Gen., 2006 U.S.

Dist. LEXIS 81268, at *11-13, *43 (dismissing amended complaint with prejudice where plaintiff failed to remedy scienter pleading deficiencies "that the Court so carefully articulated in its previous Opinion").

> ### 3.  The LaJobi Confidential Witnesses Are Insufficient And Add Nothing To Pleading Scienter As To Defendants' Prior Knowledge Of LaJobi's Customs Issues

This Court in <u>Rahman I</u> detailed the numerous deficiencies of Plaintiff's LaJobi CWs, including providing a road map of why they were insufficiently vague, as well as questioning their "specific relevance" to the alleged wrongdoing at LaJobi with respect to its customs violations disclosed publicly in March 2011. <u>See Rahman I</u> at 25-28. Nevertheless, Plaintiff disregards this Court's guidance in <u>Rahman I</u> and resorts to "[c]obbling together a litany of inadequate allegations," <u>Chubb</u>, 394 F.3d at 155, that bear no resemblance to the concrete LaJobi customs violations that this case is purportedly about. <u>See Bio-Tech. Gen.</u>, 2006 U.S. Dist. LEXIS 81268, at *13-14.

As an initial matter, CW2 was not employed at LaJobi until June 2011 – well <u>after</u> Kid Brands had already received the notice of the impending Focused Assessment, investigated the customs issues, voluntarily disclosed them to U.S. Customs, the SEC, and the public, and took remedial steps by, among other things, terminating responsible LaJobi employees. (SAC ¶¶ 32, 103). Moreover, CW1 and CW2 are not alleged to have been involved in any way with LaJobi's reporting

24

to U.S. Customs, to have had any information about LaJobi's customs reporting process, to have had personal knowledge about filing sophisticated customs reports or to have had any knowledge as to the self-initiated investigation which found that LaJobi was paying "incorrect" anti-dumping duties based on incorrect entries and invoices.  Furthermore, CW1 and CW2 are not alleged to have worked with, spoken to or met with any of the Individual Defendants or anyone at the Company through whom scienter could be imputed.  See Rahman I at 25-28; see also Chubb, 394 F.3d at 149 (finding confidential witnesses unreliable where plaintiffs cited to low-level, locally sited former employees without alleging how or why such employees would have knowledge to substantiate their claims)); Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc., 720 F. Supp. 2d 517, 542-43 (D.N.J. 2010) (questioning confidential witnesses' access to information).

Nevertheless, Plaintiff puts forth vague and incoherent statements by CW1 and CW2 that after products had been shipped from China, unspecified alleged "labels" were placed on boxes in the New Jersey distribution center in order to "obscure the 'Made in China' labels" on the boxes.  (SAC ¶¶ 38-39). Plaintiff offers without any support his personal opinion that these alleged "labels" were designed to mislead U.S. Customs officials into believing that the goods were from elsewhere to "lower" anti-dumping duties.  Id.  However, other than conclusory statements, Plaintiff does not demonstrate that this alleged "re-labeling"

25

was done to commit customs fraud.  Nowhere does Plaintiff allege that U.S

Customs officers were shown these alleged "labels" or told that LaJobi's products

were not manufactured in China.  None of the CWs asserts that any of the alleged

"re-labeling" was for the purpose of circumventing U.S. Customs duties or was

connected to LaJobi's customs process.

Indeed, the claim that Kid Brands was attempting to conceal that its

products are made in China to lower anti-dumping duties is undermined by Kid

Brands' numerous public disclosures that its products are "primarily" manufactured

in China.  See, e.g., Exs. C, D, E, F; (SAC ¶ 25).  Plaintiff's theory is also illogical

and belied by his own allegations.  Plaintiff's CW1 admits that the alleged "re-

labeling" took place after the goods had been "shipped from China" (SAC ¶ 38)

and already passed through the port where anti-dumping duties would have been

assessed and paid.[12]  Thus, it would be implausible to infer that LaJobi was

_____

[12] This Court can take judicial notice of the fact that according to applicable
customs guidelines, imported goods typically enter this country at ports throughout
the United States that are under the supervision of U.S. Customs.  See United
States v. Rockwell Automation Inc., 30 Ct. Int'l Trade 1552, 1553 (2006) (U.S.
Customs regulates entry of goods before release into the stream of commerce).
There are no allegations in the SAC that the products held at the LaJobi
distribution center in Cranbury, New Jersey (SAC ¶ 8) were assessed anti-dumping
duties at the distribution center or after the alleged "re-labeling" was done.  As
such, there is absolutely no basis for inferring that this newly alleged conduct
reflected the disclosed customs violations — much less the requisite strong
inference that it was known as such by persons through whom scienter by Kid
Brands could be imputed.

attempting to "lower" anti-dumping duties through alleged "labels" that "obscured" "Made in China" (SAC ¶ 39) when the goods had already been cleared through U.S. Customs and anti-dumping duties had already been assessed and paid. See In re Synchronoss Sec. Litig., 705 F. Supp. 2d 367, 417 n.67 (D.N.J. 2010) (plaintiff's allegations were "so heavily laden with a multitude of factual incoherences, logical gaps, contradictions with the underlying technical background and claims wholly anomalous in a business setting that these assertions appear facially non-credible").

Critically, aside from Plaintiff's "monumental leaps in logic," Plaintiff fails to establish the "requisite connection" between these unspecified alleged "labels" placed on boxes and the actual customs violations the Company itself discovered at LaJobi, voluntarily reported to U.S. Customs officials and disclosed publicly in March 2011. See Bio-Tech. Gen., 2006 U.S. Dist. LEXIS 81268, at *39. LaJobi was paying "incorrect" anti-dumping duties based on "incorrect entries and invoices," Rahman I at 3, that had identified an incorrect Chinese manufacturer – having nothing to do with "labeling" of boxes or obscuring the country of origin. See (SAC ¶¶ 103, 106; Exs. K, N). Simply put, Plaintiff's new allegations, reflected primarily in statements from CW1 and CW2, demonstrate his lack of understanding of the LaJobi customs violations and of LaJobi's customs process altogether. See Israeli v. Team Telecom Int'l, Ltd., 2006 U.S. Dist. LEXIS

73552, at *19 (D.N.J. Oct. 6, 2006) (holding that "opinion allegations among some

confidential witnesses . . . [bore] questionable relevance to the claims asserted").

> Even though these CWs should be discounted outright because they

are facially non-credible and lacking in relevance, CW1 and CW2, as well as the

other repeat LaJobi CWs, are also insufficiently vague and each suffer from the

same problems explained in Rahman I. Rahman I at 25-28 (finding Plaintiff's

allegations deficient based on exacting criteria set forth in Chubb and Avaya).

- CW3 and CW5. For reasons known only to Plaintiff, "CW3" and "CW5" in the SAC were identified as "CW1" and "CW3" in the prior complaint dismissed by this Court. However, changing their descriptive moniker does not render their allegations any more worthy. Because allegations with respect to CW3 are virtually identical to what was alleged in Plaintiff's FAC, there is no need to re-address them. (SAC ¶¶ 42, 50 (admitting that CW3 has "not provided additional information")). As to CW5 (formerly referred to as CW3), Plaintiff also repeats many of the same allegations and essentially adds that he "recalled seeing" certain executives at the LaJobi premises "from time to time." (SAC ¶ 41). CW5 does not claim to have worked with, spoken to or met with any of the Individual Defendants, says nothing about Mr. Benaroya and, importantly, provides no information about the disclosed customs issues at LaJobi. See Israeli, 2006 U.S. Dist. LEXIS 73552, at *19 (rejecting conclusory allegations from confidential witnesses that defendant visited the problem site).

- CW1 must also be discounted. Again, this witness also does not claim to have worked with, spoken to or met with any of the Individual Defendants, says nothing about Mr. Benaroya and, importantly, provides no information about the disclosed customs issues at LaJobi. See, e.g., Intelligroup, 527 F. Supp. 2d at 360 (discounting confident witness statements since they lacked any dates and there were no facts detailing how witness obtained access to the information). CW1's allegations about "labels" are insufficiently vague and not relevant to the disclosed LaJobi customs violations. Moreover, CW1 does not specify the time period the alleged "labels" were allegedly being affixed or the writings on the alleged "labels." Nor does CW1 claim

that U.S. Customs inspected the alleged "labels" or that these alleged "labels" had anything to do with the disclosed customs violations at LaJobi that involved paying "incorrect" anti-dumping duties. (SAC ¶¶ 103, 106).

- CW2 fares no better. As discussed above, CW2 was not employed at LaJobi until June 2011- well after LaJobi customs issues were discovered, disclosed and remedied. (SAC ¶ 32). CW2 must also be discounted because he also does not claim to have worked with, spoken to or met with any of the Individual Defendants, does not name Mr. Benaroya[13] and, importantly, provides no information about the disclosed customs issues at LaJobi. CW2 also does not allege that he actually participated in any meetings with executives about customs issues or had any first hand knowledge of what happened in any alleged meetings. (SAC ¶¶ 32, 40). While CW2 vaguely claims that certain "labels" were moved to different offices, he does not describe the "labels" in any detail or state what writings were on the "labels." Nowhere does he claim that U.S. Customs inspected the alleged labels or that these alleged "labels" had anything to do with the disclosed customs violations at LaJobi that involved paying "incorrect" anti-dumping duties. (SAC ¶¶ 103, 106). See Intelligroup, 527 F. Supp. 2d at 361 (discounting confidential witness who "was not providing firsthand information").[14]

---

[13] Plaintiff asserts that CW2 recalled at some unspecified time that "Kid Brands' CEO" toured the facilities. (SAC ¶ 138). It is unclear who CW2 is referring to as Mr. Benaroya was not named interim CEO until September 2011 (after the class period) (SAC ¶ 28) and CW2 provides no names or dates. In any event, as discussed supra, vague assertions about placing "labels" on boxes are not alleged to have had anything to do with the customs violations investigated at LaJobi and disclosed by the Company.

[14] Also, CW2 leaves out the dates on which he supposedly allegedly saw meetings between executives (SAC ¶ 40) and provides no facts detailing how as a low-level contract employee in the Receiving and Shipping Department with a tenure of a few months, he had any knowledge about the LaJobi customs issues that were voluntarily reported to U.S. Customs and the SEC well before his employment. See, e.g., Chubb, 394 F.3d at 148 (discounting plaintiffs' reliance on low-level, locally sited former employees without alleging how or why such employees would have obtained access to such information).

4.      **The Confidential Witnesses Do Not Support Scienter As To Plaintiff's Product-Recall Allegations**

Plaintiff has not pled particularized facts showing a strong inference of scienter regarding his new baseless claim that the Company allegedly sold re-called products at Sassy and LaJobi.  (SAC ¶¶ 44-46).  For Sassy, which operates out of Michigan, there are no confidential witnesses or other evidentiary support regarding these conclusory allegations.  Rather, Plaintiff relies entirely on the Company's public disclosures, which provide that the Company immediately and voluntarily discontinued the sale of one of its products following a warning (and not a product recall) by regulatory agencies.  (SAC ¶ 46).

As to LaJobi, Plaintiff's resort to a confidential source to provide the requisite particularity is "once again ineffectual."  <u>Chubb</u>, 394 F.3d at 154.  The same low-level former employee, CW1, who made vague assertions about "labeling" also provides his personal opinion that "the furniture that the Company was selling was trash" and that LaJobi continued to order a crib that allegedly had been "recalled for safety issues."  (SAC ¶ 44).  CW1's uncorroborated, single accusatory statement is woefully deficient and lacks the required specificity under the PSLRA.  <u>See</u> <u>Rahman I</u> at 25-28; <u>see also</u> <u>Intelligroup</u>, 527 F. Supp. 2d at 367 (confidential witnesses' opinion that the company "was not well run and their controls were not good" is "laughably vague" and of no relevance to the Court's inquiry).  There are no dates or details about when these products were allegedly

30

resold.  Other than to conclusorily state he had first hand knowledge (SAC ¶ 44),

CW1 does not explain any details as to how he obtained this information as an

employee at the Outbound Shipping Department or what basis he has for assessing

whether children's furniture is compliant with safety regulations.  See In re

Anadigics, Inc., Sec. Litig., No. 08-5572 (MLC), 2011 U.S. Dist. LEXIS 112587,

at *95 (D.N.J. Sept. 30, 2011) (refusing to infer strong inference of scienter where

no reference to particular dates on which information was allegedly conveyed to

management); Intelligroup, 527 F. Supp. 2d at 360 (failed pleading burden given

lack of dates and particularized facts detailing how CW accessed information).

Significantly, CW1 also does not say that anyone making statements

on behalf of Kid Brands was involved with or knew about the alleged sale of

recalled products.  See Nat'l Junior Baseball League, 720 F. Supp. 2d at 547

(Pursuant to the PSLRA, "[p]laintiff must identify the specific source of the

witnesses' information ('where' and 'who'), and how this information connects to

the alleged misrepresentations ('what' and 'when'")).

### 5.    Plaintiff Fails To Plead Collective Scienter

For many of the same reasons this Court addressed in Rahman I,

Plaintiff does not adequately plead collective scienter.  Rahman I at 28-42.  Even if

Plaintiff could attempt to plead scienter against a corporation without pleading

scienter against an individual, as discussed in Rahman I, the alleged wrongdoing to

assert collective scienter would need to be "extraordinary." Id. at 36 (citing City of Roseville Empls. Ret. Sys. v. Horizon Lines, 442 Fed. App'x. 672 (3d Cir. 2011)).

The facts pled here are a "far cry" from demonstrating "extraordinary" conduct. Id. As discussed supra, as to LaJobi, Plaintiff confuses the exact nature of the misconduct and does not specify the underlying nature of the customs violations that were disclosed in March 2011. Again, the Company's disclosures revealed customs violations related to "misidentification" on invoices, not alleged unidentified white "stickers" on boxes. (SAC ¶¶ 103, 106). Regarding CoCaLo and Kid Lines, the SAC "does not give any indication of what notice, if any, Defendants had of any wrongdoing on the part of CoCaLo and Kids Line prior to the August 15 and 16, 2011 disclosures," nor does it adequately plead that the discrete customs issues at these subsidiaries were widespread. Rahman I at 39. In short, at most, the only factual allegation contained in the SAC is that the Company discovered discrete customs violations at its subsidiaries which were promptly investigated and voluntarily disclosed to the public – facts that indicate diligence, not scienter. See In re Alpharma Sec. Litig., 372 F.3d 137, 153 (3d Cir. 2004) (failure to link knowledge of subsidiary's wrongdoing to members of the parent company's management compels dismissal).[15]  This Court in Rahman I

---

[15]  Plaintiff's assertion that the customs issues at LaJobi (located in New Jersey) were the "exact same" as those at Kids Line (located in Los Angeles) and

(cont'd)

provided an extensive analysis of the many shortcomings of Plaintiff's failure to plead collective scienter, see id. at 36-42, and these remain true as to Plaintiff's third attempted pleading. It is Plaintiff's burden to plead fraud and his last ditch efforts to conflate all of these matters into a single pattern of intentional misconduct is unsupported by the facts alleged and should now be dismissed with prejudice.[16]

### B.    The SAC Fails To Plead Scienter Against Defendant Benaroya

The SAC contains no facts to even suggest – let alone give rise to a strong inference – that outside director Defendant Benaroya knowingly made any false statements or knew about the customs violations or the alleged product recalls earlier than their public disclosure. See Rahman I at 42; see also City of Roseville Emps.' Ret. Sys., 2011 U.S. Dist. LEXIS 122560, at *19 (holding that Kid Brands' directors' actions were entirely "appropriate and 'appear to be precisely the types of

_____

*(cont'd from previous page)*

CoCaLo (located in Irvine) (SAC ¶¶ 57, 104, 140) is entirely conclusory and unsupported by the allegations in the SAC and the Company's disclosures of the discrete, unrelated customs issues at these subsidiaries. (SAC ¶¶ 103, 126).

[16]   Plaintiff also does not plead collective scienter with respect to the conclusory allegations relating to product recalls that are based on a single, uncorroborated witness who provides no details or dates. There are no facts alleged that any Defendant or anyone making statements on behalf of Kid Brands engaged in any wrongdoing or knew of any wrongdoing or that the disclosed matter was anything other than a discrete issue relating to new crib safety standards (SAC ¶¶ 44-46) – and not the sale of recalled products. Plaintiff also fails to ascribe a legally sufficient motive to Kid Brands to commit any alleged acts of fraud.

actions an independent board exercising valid business judgment should take when made aware of a serious problem'") (quoting <u>Kanter</u>, 489 F.3d at 181)). Also, tellingly, Plaintiff asserts no motive or opportunity for why Defendant Benaroya would commit fraud. <u>Rahman I</u> at 42. To paraphrase this Court's decision in <u>Rahman I</u>, "[s]ince no personal benefit is alleged as to [Mr. Benaroya] or any other indicia beyond incentive to ensure Kid Brands' success, Plaintiff's allegations as to said Defendant[] lack[s] the overall factual support necessary to establish the heightened pleading requirements for scienter under the PSLRA." <u>Id.</u> at 42-43; <u>see also</u> <u>id.</u> at 37 (dismissing claims against individual defendants because "no facts are alleged that any individual defendants were told about customs violations," nor are the individual defendants "specifically implicated in knowingly coordinating with Kid Brands' subsidiaries regarding the alleged customs violations").

## III.   PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION WITH RESPECT TO THE SO-CALLED "RE-LABELING" OR PRODUCT RECALL CLAIMS[17]

Plaintiff's claims relating to the so-called "re-labeling" or product recall should also be dismissed for the separate and independent reason that they fail to adequately allege loss causation, an essential element of any Section 10(b)

---

[17]   While for purposes of this motion, Kid Brands and Benaroya do not address loss causation in relation to the LaJobi customs issue relating to invoices, should this case proceed they, of course, reserve their right to contest this issue on the merits.

claim.  See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005).  To

demonstrate loss causation in a securities fraud case, "'the plaintiff must show that

the defendant misrepresented or omitted the very facts that were a substantial

factor in causing the plaintiff's economic loss.'"  LLDVF, L.P., 2010 U.S. Dist.

LEXIS 82078, at *26 (citation omitted).  A plaintiff must allege that the

"misstatement or omission concealed something from the market that, when

disclosed, negatively affected the value of the security."  Lentell, 396 F.3d at 173

(to establish loss causation, "a plaintiff must allege . . . that the subject of the

fraudulent statement or omission was the cause of the actual loss suffered").  In

other words, as this Court explained in Intelligroup where it dismissed a securities

fraud case for failure to plead loss causation, "the plaintiff is required to plead that

the decline in the stock price was caused by the market's discovery of defendant's

fraud." 527 F. Supp. 2d at 295 (dismissing action because plaintiff failed to tie

corrective disclosures to facts asserted as the basis of defendants' alleged fraud).

　　　　In fraud-on-the-market cases such as this (SAC ¶ 166), "an inflated

purchase price will not itself constitute or proximately cause the relevant economic

loss." Dura, 544 U.S. at 342.  Rather, a plaintiff must plead facts that defendants'

alleged fraud was disclosed publicly and this proximately caused the plaintiff's

losses.  See Lentell, 396 F.3d at 175.  Typically, loss causation is pled by alleging a

"corrective disclosure" – i.e., a statement that served to reveal "to the market the

falsity of prior recommendations" – followed by a drop in stock price.  Id.; see also

McKowan Lowe & Co., 2005 U.S. Dist. LEXIS 32164, at *28 ("Loss causation

requires disclosure.").  Here, no such allegations are made.  Critically, Plaintiff

does not (and cannot) point to a single corrective disclosure that revealed publicly

the allegations of misconduct relating to Plaintiff's new theories of "re-labeling"

boxes (SAC ¶¶ 2, 6, 37-40) and selling recalled products (SAC ¶¶ 2, 44-46), about

which Plaintiff now complains in his SAC.  See (SAC ¶¶ 2, 82 (Plaintiff conceding

that new allegations were "uncovered" for first time "[a]fter" Court's dismissal and

were "never disclosed" to the public)).  Courts have consistently held that absent

public disclosure of the alleged fraud, there can be no loss causation.  See, e.g.,

Dura, 544 U.S. at 342; Lentell, 396 F.3d at 173; McKowan Lowe & Co., 2005 U.S.

Dist. LEXIS 32164, at *28; Nat'l Junior Baseball League, 720 F. Supp. 2d at 562;

Intelligroup, 527 F. Supp. 2d at 295; In re Tellium, Inc. Sec. Litig., No. 02-cv-5878

(FLW), 2005 U.S. Dist. LEXIS 26332, at *11 (D.N.J. Aug. 26, 2005).

   Contrary to Plaintiff's assertion that his losses were caused when the

"full extent" of Defendants' misconduct was revealed to the market in the March

and August 2011 disclosures (SAC ¶¶ 126, 165), Plaintiff's new theories of

misconduct are nowhere found in those disclosures.  (SAC ¶¶ 103, 106, 126-28).

First, as to the customs issues at LaJobi, the Company disclosed on March 15,

2011, that after a self-initiated investigation it found certain instances at LaJobi in

which "incorrect" anti-dumping duties were applied on products imported from

China. (SAC ¶¶ 103, 106).  Nothing is said about LaJobi allegedly "re-labeling"

boxes.  And, again, Plaintiff's theory is nonsensical as by the time the goods were

shipped from China and made it to the New Jersey distribution center, they had

already cleared U.S. Customs and anti-dumping duties had been assessed and paid

given that the goods were imported from China subject to anti-dumping duties.  In

regards to the August 2011 disclosures regarding the Company's self-initiated

investigation into its CoCaLo and Kids Line subsidiaries, the Company disclosed

that following a review of a "sampling of customs filings," it identified "incorrect

entries and invoices with U.S. Customs."  (SAC ¶ 126).  Once again, the customs

violations involved discrete customs issues regarding inaccurate reporting on

customs forms, having nothing to do with "re-labeling" boxes.  As this Court held

in Intelligroup, Plaintiff's "conflation of the issues . . . only 'muddies the waters' of

this technical but clear matter."  527 F. Supp. 2d at 325-27 (no loss causation

where alleged corrective disclosures addressed other issues that were not the actual

cause of the particular injury alleged by plaintiffs); Nat'l Junior Baseball League,

720 F. Supp. 2d at 561 (no loss causation where complaint does not demonstrate "a

market correction of the artificial inflation caused by Defendants'

misrepresentations"); In re Tellium, Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 26332,

at *14 (no loss causation "following an announcement of bad news that does not disclose the fraud").

       Second, as to Plaintiff's new allegations regarding the reselling of recalled products (SAC ¶¶ 2, 44-46), the Company's disclosures do not state that the Company was selling products that had been recalled.  The plain language of the August 16, 2011 disclosure upon which Plaintiff relies says nothing about a "recalled" product.  (SAC ¶ 45).  Rather, the Company disclosed that it would incur costs associated with the "implementation" of new "safety standards" to bring certain products "into compliance" with updated safety standards.  (SAC ¶¶ 45, 127).  See  Klein v. Autek Corp., No. 01-5751, 2004 U.S. Dist. LEXIS 29013 (D.N.J. June 30, 2004) ("'Investors cannot complain about a fraud that did not cause them any harm'" and must establish a "'sufficient causal nexus between the loss and the alleged misrepresentation'"), aff'd, 147 F. App'x 272 (3d Cir. 2005); see also Intelligroup, 527 F. Supp. 2d at 340 (no loss causation where plaintiffs "provide two sets of facts that cannot be matched since they present pieces of two entirely different puzzles, and Plaintiffs' bald assertions that their facts should be perceived as matching cannot salvage their claim").

## IV.    PLAINTIFF DOES NOT ADEQUATELY ATTRIBUTE THE ALLEGED MISSTATEMENTS TO EACH DEFENDANT

       This Court explained in Rahman I that the PSLRA requires plaintiffs to "specify the role of each defendant, demonstrating each defendant's involvement

in the misstatements and omissions." <u>Rahman I</u> at 11 (citing <u>Winer Family Trust</u>,

503 F.3d at 335-36).  Moreover, as the United States Supreme Court recently

explained, in <u>Janus</u>, 131 S. Ct. at 2302, individual defendants may be held liable

for only those statements directly attributed to them and over which they exercised

"ultimate authority."[18]  Here, Defendant Benaroya was a non-management outside

director throughout the class period (SAC ¶ 28) and is not alleged to have made

any false or misleading statements nor to have exercised "ultimate authority" over

any of the challenged statements.  Defendant Benaroya is alleged only to have

"signed the Company's SEC filings, including its Form 10-K. " <u>Id</u>.  Accordingly,

Defendant Benaroya cannot be held liable for statements he did not make.

## V.   PLAINTIFF'S CONTROL PERSON CLAIM AGAINST DEFENDANT BENAROYA MUST BE DISMISSED

Plaintiff's claim for control person liability against Mr. Benaroya

under Section 20(a) of the Exchange Act should also be dismissed because

Plaintiff has failed to allege a primary violation of the securities laws, <u>Rahman I</u> at

14, or to allege that Mr. Benaroya culpably participated in the alleged fraud or had

sufficient control.  <u>See</u> <u>Institutional Investors Grp. v. Avaya, Inc.</u>, 564 F.3d 242,

252 (3d Cir. 2009).  "Under the plain language of [Section 20(a)], plaintiffs must

---

[18]   Plaintiff's SAC continues to use much of the same group pleading language and does not specify which Defendant made which alleged misstatement; when the misstatement was made; nor why it was known to be false. This Court already rejected Plaintiff's deficient group pleading in <u>Rahman I</u>.  <u>See</u> <u>Rahman I</u> at 29.

'prove not only that one person controlled another person, but also that the "controlling person" is liable under the Act.  If no controlled person is liable, there can be no controlling person liability.'"  Rahman I at 14 (quoting Alpharma, 372 F.3d at 153).  Because Mr. Benaroya neither served as an officer during the class period (SAC ¶ 28), nor was he alleged to have committed an underlying securities violation or participated in the alleged fraud, this claim against him should also be dismissed.

## CONCLUSION

For all of the reasons set forth above, the SAC should be dismissed with prejudice against Kid Brands and Mr. Benaroya.

Dated:  New York, New York
        June 29, 2012

                    Respectfully submitted,

                    SKADDEN, ARPS, SLATE,
                     MEAGHER & FLOM LLP

                    By: /s/ Andrew Muscato _____

                    Andrew Muscato
                    Robert J. Del Tufo
                    Jay B. Kasner (admitted *pro hac vice*)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    *Attorneys for Defendants Kid Brands,
                     Inc. and Raphael Benaroya*

40