# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

SHAH RAHMAN, Individually and
on Behalf of All Others Similarly
Situated,

                      *Plaintiff,*

   v.

KID BRANDS, INC., et al.

                     *Defendants*.

**CASE No.: 11-cv-01624 (JLL) (MAH)**

**ECF Case**
**Electronically Filed**

**<u>Oral Argument Requested</u>**

**Return Date:  October 1, 2012**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT GUY A. PAGLINCO'S MOTION TO
## DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

THOMPSON HINE LLP

Rebecca Brazzano
335 Madison Avenue, 12th Floor
New York, New York 10017
Phone: (212) 344-5680
Fax: (212) 344-6101

C. Dennis Southard IV
David A. Wilson (admitted *pro hac vice*)
1919 M Street, N.W., Suite 700
Washington, D.C.  20036
Phone: (202) 331-8800
Fax: (202) 331-8330

*Attorneys for Defendant Guy A. Paglinco*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES ........................................................ ii

I.  PRELIMINARY STATEMENT ...........................................1

II.  SUMMARY OF FACTS...................................................2

III.  ARGUMENT AND CITATION OF AUTHORITY ......................6

    A. The Second Amended Complaint Fails To Allege Facts With
       Sufficient Particularity To Raise A Strong Inference That Mr.
       Paglinco Acted With Scienter....................................6

      1. The Second Amended Complaint Pleads No Facts Showing
         That Mr. Paglinco Knew Any Statements Were False When
         They Were Made. ............................................8

      2. The Second Amended Complaint Fails To Plead Any Motive
         For Making Any False Statement.............................14

    B. The Second Amended Complaint Fails To Allege A Claim Under
       Section 20(A) Of The Exchange Act Against Mr. Paglinco. ....................15

IV.  CONCLUSION ............................................................15

# TABLE OF AUTHORITIES

**Cases**

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) ............................................................................................. 11, 12

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) .................................... 14

*In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262 (D.N.J. 2007) ................. 11, 14, 15

*In re Merck & Co., Inc. Secs. Derivative & ERISA Litig.*, Nos. 05-1151 (SRC), 2011 U.S. Dist. LEXIS 87578 (D.N.J. Aug. 8, 2011) ............................. 7

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002) ..................................... 7

*In re PDI Sec. Litig.*, No. 02-211 (GEB), 2006 U.S. Dist. LEXIS 80142 (D.N.J. Nov. 2, 2006) ................................................................................. 6, 15

*In re Suprema Specialities, Inc. Sec. Litig.*, 334 F. Supp. 2d 637 (D.N.J. 2004), *aff'd in part rev'd in part*, 438 F.3d 256 (3d Cir. 2006) .......................... 7, 8

*Key Equity Investors, Inc. v. Sel-Leb Mktg., Inc.*, 246 F. App'x 780 (3d Cir. 2007) ............................................................................................................ 7

*McGowan Investors, LP v. Frucher*, 481 F. Supp. 2d 405 (E.D. Pa. 2007), *aff'd*, 392 F. App'x 39 (3d Cir. 2010) ................................................................. 9

*Nat'l Jr. Baseball League v. Pharmanet Dev. Group Inc.*, 720 F. Supp. 2d 517 (D.N.J. 2010) ..................................................................................... 11, 12

*Rahman v. Kids Brands, Inc.*, No. 11-1624, slip. op. (D.N.J. Mar. 8, 2012) ... passim

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................. passim

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) ..................................... 7

**Statutes**

19 C.F.R. § 141.61 ................................................................................................ 12

15 U.S.C. § 78u-4 ............................................................................................... 1, 6

19 U.S.C. § 1484 .................................................................................................. 12

Defendant Guy A. Paglinco ("Mr. Paglinco") respectfully submits this memorandum of law in support of his motion to dismiss the Second Amended Class Action Complaint ("Second Amended Complaint" or "SAC") of Plaintiff Shah Rahman ("Plaintiff").

## I. <u>PRELIMINARY STATEMENT</u>

The Private Securities Litigation Reform Act of 1995 (the "PLSRA") was enacted by Congress to deter unsupported suits under the federal securities laws. To that purpose, the PSLRA requires, among other things, that a complaint allege facts with sufficient particularity to support a "strong" – *i.e.*, a powerful or cogent – inference that the defendant acted with the culpable mental state, or "scienter," required for liability.  15 U.S.C. § 78u-4(b)(2); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

In its Opinion filed March 8, 2012, this Court dismissed the (First) Amended Complaint as to Mr. Paglinco precisely because it failed to plead "the overall factual support necessary to establish the heightened pleading requirements for scienter under the PSLRA." *Rahman v. Kids Brands, Inc.*, No. 11-1624, slip. op. at 41-43 (D.N.J. Mar. 8, 2012).  The Second Amended Complaint does not do any better.

Like the (First) Amended Complaint, the Second Amended Complaint continues to lack the required particularized facts needed to sustain a strong

inference that Mr. Paglinco made any fraudulent statement or misrepresentation with scienter.  The Second Amended Complaint adds no allegation of fact that clearly attributes to Mr. Paglinco knowledge that subsidiaries of Kid Brands, Inc. (the "Company") had violated U.S. Customs laws, or engaged in any other unlawful act, on a date prior to the conceded full disclosures made by the Company on August 15 and 16, 2011.  While Plaintiff attempts to leave the impression that there is something of that kind in the present Complaint, by the presentation of allegations concerning Confidential Witness ("CW") 2, a careful reading of those allegations (*see* pp. 9-13, below) reveals that they are ambiguous at best and fail to tie Mr. Paglinco to any culpable knowledge at any relevant time.

The Second Amended Complaint against Mr. Paglinco therefore must be dismissed.

## II.  SUMMARY OF FACTS

Mr. Paglinco adopts and incorporates by reference the Summary of Facts set forth in Defendant Kid Brands, Inc.'s Memorandum of Law, and, in consideration of the Court's time, will summarize only those few allegations that appear to concern Mr. Paglinco.

The Second Amended Complaint relies on the alleged fact that Mr. Paglinco "was, during the relevant period, Vice President and Chief Accounting Officer of Kid Brands," and that, in such capacity, he "signed and certified the Company's

SEC filings, including its Forms 10-Q and 10-K." (SAC, ¶ 27.) Plaintiff alleges that "each of Kid Brands' abovementioned quarterly and yearly SEC filings [for 2009, 2010, and the first and second quarters of 2011] contained virtually identical materially false and misleading certifications by Defendants Crain and Paglinco, which stated in part, that 'the information contained in the report fairly presents, in all material respects, the financial condition and results of operations of the company,'" and attested to the effectiveness of the Company's internal controls. (*Id.*, ¶ 116). According to the Second Amended Complaint, such SEC filings were materially false and misleading because they did not acknowledge alleged illegal or improper practices, in the areas of (i) Customs, (ii) product safety, and (iii) staffing. (*Id.*, ¶¶ 66-82, 85-88, 93-96, 106-117.)[1]

Plaintiff broadly asserts that there was "a pattern and practice of training employees to systematically violate U.S. Customs laws and regulations" at certain subsidiaries. (*Id.*, ¶ 132.) As support for that alleged pattern and practice, Plaintiff relies on CW1 (an employee only at the Company's LaJobi subsidiary) who states that he/she participated in replacing country of origin stickers for some of LaJobi's products at the distribution warehouse in New Jersey, after the boxes had been imported into the United States, and had been trained in that practice by LaJobi's

---

[1]   While the SAC also alleges that the Company's statements about the adequacy of its controls were false and misleading, the absence of any basis for inferring scienter concerning those statements depends entirely on and is subsumed by the statements concerning the Company's custom's violations. *See Rahman* at 22-23.

Operations Manager, Myles McGrath.  (*Id.*, ¶¶ 31, 38.)   Plaintiff does not, however, explain how this alleged re-labeling operated to avoid any Customs duties.   Moreover, nothing is said by CW1 concerning whether anyone in the parent Company's management or on its Board had any knowledge of this alleged practice prior to the Company's March 15, 2011 disclosures concerning the results of the investigation into the incorrect payment of duties by the LaJobi subsidiary.

CW2 also was employed only at the LaJobi subsidiary, and only for the very limited period "June 2011 until January 2012." (*Id.,* ¶ 37.)   CW2 purports to confirm the relabeling practice and McGrath's involvement; CW2 also asserts that new country of origin stickers were provided by "a manager named Brenda" to whom CW2 reported.  (*See id.*, ¶¶ 31, 38-39.)   In addition, CW2 states that "approximately every other month," between June 2011 – well after the March 15 LaJobi disclosure – and January 2012, he/she recalled "the Kid Brands CEO and CFO meeting with McGrath and Brenda" in McGrath's office at the LaJobi facility, and that prior to those meetings stickers were moved from Brenda's office to McGrath's office, prompting CW2 to conclude that the meeting concerned the alleged relabeling practice.  (*Id.*, ¶ 45.)  Again, the SAC does not explain how this alleged practice or this meeting related in any way to the under-payment of Customs duties the Company had disclosed months before CW2 worked at the

New Jersey distribution center.  In addition, Mr. Paglinco's name is not referenced in any of these allegations attributed to CW2.

Neither CW1 nor CW2 is alleged to have:  (i) personal knowledge concerning any of the Defendants' involvement with the LaJobi subsidiaries' Customs issues; (ii) been privy to any Customs information at LaJobi; or (iii) reviewed any of LaJobi's Customs declarations or forms, or had any association with LaJobi's reporting of goods to U.S. Customs.

According to other confidential witnesses, "there were rumors that things weren't on the up and up" at the LaJobi subsidiary.  (*Id.*, ¶¶ 42, 52.)  But these "confidential witnesses" do not state that Mr. Paglinco had any knowledge of such "rumors" when he certified the relevant SEC filings.

With respect to the alleged safety practices, the Second Amended Complaint asserts that two of the Company's subsidiaries sold products that were later subject to recall.  (*Id.*, ¶¶ 44-46.)  Again, there are no allegations that Mr. Paglinco knew, when he signed the Company's SEC filings, that any products were unsafe or that they would be subject to a recall.

The alleged improper staffing practices take two forms: possible violations of foreign laws concerning services performed overseas by L&J Industries under a services agreement with the Company; and possible unlawful terminations of domestic employees at unspecified Company "subsidiaries."  (*Id.*, ¶¶ 47-50.)

Again, however, there are no allegations that Mr. Paglinco knew of theses potentially improper practices when he signed the Company's SEC filings.

### III.  ARGUMENT AND CITATION OF AUTHORITY[2]

As demonstrated below, the Second Amended Complaint fails to plead scienter with the required heightened specificity.

**A.  The Second Amended Complaint Fails To Allege Facts With Sufficient Particularity To Raise A Strong Inference That Mr. Paglinco Acted With Scienter.**

Pleading a viable securities fraud claim requires that a complaint allege facts with sufficient particularity to support a "strong inference" that the defendant acted with scienter.  *In re PDI Sec. Litig.*, No. 02-211 (GEB), 2006 U.S. Dist. LEXIS 80142, at *19 (D.N.J. Nov. 2, 2006).  Such inferences are not to be drawn lightly. "The inference may be made only where the fact pattern unambiguously indicated that the defendant *must have been* acting with the requisite state of mind."  *Id.* at *20.  Thus, to withstand the scrutiny imposed by the PLSRA, "the inference of scienter must be (1) reasonable, (2) strong, and (3) based on pleadings stating the pertinent facts with particularity."  *Id.; see* 15 U.S.C. § § 78u-4(b)(1, 2).  Each of these elements is lacking as regards Mr. Paglinco.

---

[2]  Mr. Paglinco repeats and incorporates by reference the pleading standards as set forth in Defendant Kid Brands, Inc.'s Memorandum of Law in Support of the Motion to Dismiss Plaintiff's Second Amended Complaint.

An inference of scienter must be based on "facts that constitute strong circumstantial evidence of *conscious* misbehavior or recklessness." *Key Equity Investors, Inc. v. Sel-Leb Mktg., Inc.*, 246 F. App'x 780, 784-85 (3d Cir. 2007) (emphasis added).  Additionally,  facts that "show that defendants had both motive and opportunity to commit the fraud" are relevant concerning a defendant's state of mind, although they alone are not sufficient.  *In re Merck & Co., Inc. Secs. Derivative & ERISA Litig.*, Nos. 05-1151 (SRC), 2011 U.S. Dist. LEXIS 87578, at *105 (D.N.J. Aug. 8, 2011).  When assessing the facts alleged in a complaint as a whole, the "strong" inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314 (2007).  These heighted pleading requirements must be satisfied for *each* defendant.  *Winer Family Trust v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007).

In addition, the Third Circuit has repeatedly rejected attempts by plaintiffs to create "fraud by hindsight." *Winer Family Trust*, 503 F.3d at 331.  Thus, in order to create liability, a statement or omission must be misleading at the time it is made, not when past events are analyzed with the benefit of present day knowledge.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002); *see also In re Suprema Specialities, Inc. Sec. Litig.*, 334 F. Supp. 2d 637, 647 (D.N.J. 2004) ("Allegations that a company's later financial difficulties imply that earlier

financial statements were untrue or misleading are 'fraud by hindsight' and do not

state a claim."), *aff'd in part rev'd in part*, 438 F.3d 256 (3d Cir. 2006).

1. **The Second Amended Complaint Pleads No Facts Showing That Mr. Paglinco Knew Any Statements Were False When They Were Made.**

Like the (First) Amended Complaint, the Second Amended Complaint

generally alleges scienter based on Mr. Paglinco's position in the parent Company:

> Because of their positions with the Company and their access to
> material non-public information, the Individual Defendants knew that
> the adverse facts specified herein had not been disclosed to and were
> being concealed from the public and that the positive representations
> being made were then materially false and misleading.

(SAC, ¶ 154; *see also  id.*, ¶ 181 ("[E]ach of these Defendants had direct and

supervisory involvement in the day-to-day operations of the Company and,

therefore, is presumed to have had the power to control or influence the particular

transactions giving rise to the securities violations . . . ")).   Like the (First)

Amended Complaint, the Second Amended Complaint alleges no particular facts to

support scienter beyond this nebulous assertion of general corporate authority.  As

this Court concluded when it dismissed the (First) Amended Complaint, such lack

of detailed support is fatal to Plaintiff's general corporate authority theory:

> However, the Amended Complaint alleges no facts which single out
> either Defendant Crain or Defendant Paglinco regarding the nature of
> the knowledge or recklessness they possessed based on either the
> specific information regarding the customs violations they would have
> had access to based on their position within Kid Brands or any

information they would have received based on specific events or witnesses that conveyed information to them.

*Rahman v. Kids Brands, Inc.*, No. 11-1624, slip. op. at 42 (D.N.J. Mar. 8, 2012).

*See also McGowan Investors, LP v. Frucher*, 481 F. Supp. 2d 405, 417-18 (E.D. Pa. 2007), *aff'd*, 392 F. App'x 39 (3d Cir. 2010) (recognizing that scienter may not be shown "simply by suggesting that a defendant by virtue of her position 'must have known' about fraud.").

Notwithstanding this Court's clear guidance, the Second Amended Complaint contains only one new allegation that even arguably adds to the scienter equation:

> CW2 is a former LaJobi employee who worked [there] from [an unspecified date in] June 2011 until [an unspecified date in] January 2012. . . . CW2 recalled the Kids Brands CEO and CFO touring the facilities and meeting with McGrath and Brenda approximately every other month throughout CW2's employment. According to CW2, McGrath and Brenda conferred with the CEO and CFO [on an unspecified date] regarding the protocol for affixing false country or origin labels. Ordinarily, Brenda kept the labels in her office, but when the CEO and CFO arrived [on an unspecified date] to meet with McGrath and Brenda, the meetings would take place in McGrath's office and the labels were moved into McGrath's office for the meetings.

(SAC, ¶¶ 32, 40; *accord id.*, ¶¶ 138, 148.) That lone allegation, however, does not stand up to scrutiny, and is insufficient to create the "strong inference" required to meet the heightened PLSRA pleading standard regarding Mr. Paglinco.

To begin, the CW2 allegation is ambiguous as to *when* the alleged meetings occurred, and without such particulars the alleged fact that there were meetings is

meaningless.  Thus, CW2 claims to have worked at LaJobi from some unspecified time in June 2011 until some unspecified time in January 2012 (SAC, ¶ 32), and alleges that the CEO and CFO met with McGrath and Brenda "approximately every other month" (SAC, ¶ 40).  But within those parameters, the first of the alleged meetings had to have occurred after March 15, 2011, at which time the LaJobi Customs violations had already been first publicly announced (*see* SAC, ¶ 151), and could even have occurred (if at all) after the disclosures on August 15 and 16, 2011 (that discussed practices at other subsidiaries where CW2 did not work), outside the Class Period (*id.*, ¶¶ 1, 17-18).[3]

Quite aside from these ambiguities concerning *when* the alleged meetings occurred, there also is no allegation that *CW2* was present in McGrath's office during the supposed meetings.  Plaintiff seeks to have the Court draw the inference that because the country of origin labels were allegedly moved from Brenda's

---

[3]   Nor does CW2 unambiguously identify Mr. Paglinco as a person involved in the alleged meetings.   Whereas Mr. Paglinco is specifically identified in the Second Amended Complaint as the "Chief *Accounting* Officer" (*see* SAC, ¶ 27), the CW2 allegation identifies the meeting participants as McGrath, Brenda, the Kids Brands CEO and "CFO".   While Mr. Paglinco indeed was the *parent* Company's CFO during the time that CW2 worked for the LaJobi *subsidiary*, the failure to specifically identify Mr. Paglinco by name in the CW2 allegation is not insignificant since LaJobi also had its *own* CFO.  This failure to unambiguously identify the parties weighs against inferring scienter as to Mr. Paglinco.   *See Tellabs*, 551 U.S. at 326 (recognizing that "omission and ambiguities count against inferring scienter, for plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." (internal quotation marks omitted)).

office to McGrath's office prior to the meetings, the discussion among the CEO, the CFO and McGrath concerned those labels.   Even if that inference were reasonable, it is an additional leap in logic to infer that the discussion was in furtherance of a scheme to defraud Customs.   Without specific details demonstrating CW2's personal knowledge of the facts alleged, CW2's allegations are irrelevant and properly must be ignored.   *See Nat'l Jr. Baseball League v. Pharmanet Dev. Group Inc.*, 720 F. Supp. 2d 517, 538-39 (D.N.J. 2010) ("[A]llegations attributed to the information obtained from a confidential source must contain specific details regarding the basis for the source's personal knowledge and describe supporting events in detail.").

Indeed, before confidential sources may even be considered as support for a securities fraud complaint, "the complaint must disclose: (1) the time period that the confidential source worked at the defendant-company, (2) the dates on which the relevant information was acquired, and (3) the facts detailing how the sources obtained access to the information."   *Id.* at 538 (citing *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 290 (D.N.J. 2007); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 146 (3d Cir. 2004)).   "[T]he Third Circuit [has] cautioned that allegations attributed to the information obtained from a confidential source must contain specific details regarding the basis for the source's personal knowledge and describe supporting events in detail."   *Id.* at 538-39 (citing *Chubb*,

394 F.3d at 146).  The failure to meet these requirements renders the confidential source irrelevant and "the court must ignore the insufficiently described witness' statements for purposes of evaluating the plaintiff's allegations."  *Id.* at 539, 554. Here, as shown, the Second Amended Complaint fails to specifically identify the alleged meeting dates, whether Mr. Paglinco specifically was present, or how CW2 knew what was discussed at these alleged meetings.

Finally, the inference of culpability Plaintiff would have the Court draw from the CW2 allegation is not even cogent.  Plaintiff does not explain how re-labeling boxes that were already in a distribution warehouse could have any significance to their treatment for Customs duties.  The procedure for declaring import duties is set forth in detail in 19 U.S.C. § 1484 (describing documentation required for entry of imported goods in order to be able to assess proper duties), and 19 C.F.R. part 141.61 (describing preparation and submission of Customs and Border Protection Form 7501).  Neither of these provisions references country of origin labels as a basis for calculating proper duties.

It is also simply unrealistic and implausible that senior management of LaJobi's parent Company would be discussing in some culpable way "the protocol for affixing false country of origin labels" on LaJobi's products, *after* LaJobi's import practices had been the subject of a U.S. Customs focused assessment (*see id.*, ¶ 12), and investigated by the Company's law firm (*see id.*, ¶ 13), and when the

Company already had publicly announced LaJobi's Customs violations (*see id.*, ¶ 151).  *See Rahman v. Kid Brands, Inc.*, No. 11-1624, slip op. at 42 (D.N.J. Mar. 8, 2012) ("The Court agrees with Defendants that, given the investigations initiated by the Board and the lack of any confidential witness . . . indicating that Defendants Crain, Paglinco or anyone at the Company, knew about the customs violations earlier than their public disclosure, the most 'plausible inference flowing from these facts is a non-culpable inference.'").  Where, as here, the inference of non-culpability is more compelling than the proposed inference of scienter, a complaint must be dismissed.  *See Tellabs*, 551 U.S. at 324 ("A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.").

In sum, the CW2 allegation is meticulously indefinite concerning a number of critical facts (as to date, those present in the alleged meetings, and the meetings' subject matter) needed to support an inference of scienter – and does not support the required "strong" inference – as to Mr. Paglinco.[4]

---

[4]   As explained in detail in the Company's brief, these new allegations also fail because they do not establish the element of loss causation, which is required to plead a claim under Section 10(b) of the Exchange Act.  Mr. Paglinco adopts the arguments concerning loss causation that are set forth by the Company.

## 2.   The Second Amended Complaint Fails To Plead Any Motive For Making Any False Statement.

"Motive entails allegations that the individual corporate defendants stood to gain in a concrete and personal way from one or more of the allegedly false or misleading statements and wrongful nondisclosures." *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 284 (D.N.J. 2007) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999)) (emphasis added). Although allegations of motive are not necessarily required to demonstrate scienter, the failure to allege motive is relevant to the scienter analysis. *See Tellabs*, 551 U.S. at 325.

Here, the Second Amended Complaint does not even suggest a motive for Mr. Paglinco to commit the alleged fraud (notably, after this Court rejected the alleged corporate profitability motive in its dismissal of the (First) Amended Complaint, even those allegations were removed from the Second Amended Complaint). *See Rahman v. Kids Brands, Inc.*, No. 11-1624, slip. op. at 41-43 (D.N.J. Mar. 8, 2012). The lack of *any* allegation of motive further betrays the Second Amended Complaint's attempt to infer scienter. *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d at 343 (dismissing securities fraud claim in part due to the plaintiff's failure to allege any facts that the defendants had any motive to commit the wrongs alleged against them).

14

**B.   The Second Amended Complaint Fails To Allege A Claim Under Section 20(A) Of The Exchange Act Against Mr. Paglinco.**

The Second Amended Complaint fails to plead a primary violation of Section 10(b) of the Exchange Act.   This failure requires dismissal of the remaining secondary claim under Section 20(a) as well.   *See In re Intelligroup Sec. Litig.* 527 F. Supp. 2d at 377 (describing Section 20(a) claims as "derivative"); *see also In re PDI Sec. Litig.*, 2006 U.S. Dist. LEXIS 80142, *106 (D.N.J. Nov. 2, 2006) (if a plaintiff fails to adequately plead the underlying securities fraud claim, then the § 20(a) claim must also be dismissed.).   Because the Second Amended Complaint's allegations as to the individual defendants' state of mind are entirely absent, Plaintiff has failed to allege the required culpable participation.

## IV.  CONCLUSION

The Second Amended Complaint as to Mr. Paglinco should be dismissed.

Respectfully submitted,

THOMPSON HINE LLP

Dated:  June 29, 2012                    By:_____/s/ *Rebecca Brazzano*_____
                                         Rebecca Brazzano
                                         335 Madison Avenue, 12th Floor
                                         New York, New York 10017
                                         Phone: (212) 344-5680
                                         Fax: (212) 344-6101

15

C. Dennis Southard IV
David A. Wilson (admitted *pro hac vice*)
1919 M Street, N.W., Suite 700
Washington, D.C.  20036
Phone: (202) 331-8800
Fax: (202) 331-8330

*Attorneys for Defendant Guy A. Paglinco*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2012, I have electronically filed and served a true and correct copy of the foregoing **Memorandum Of Law In Support Of Defendants Paglinco's Motion To Dismiss Plaintiff's Second Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will automatically send a copy to the following attorneys of record:

Jeffrey W. Herrmann
Cohn, Lifland, Pearlman, Herrmann & Knopf, LLC
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddlebrook, NJ 07663
*Attorney for Shah Rahman*

Robert J. Del Tufo
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036
*Attorney for Kids Brands, Inc.*

David Graff
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, NY 10019
*Attorney for Bruce C. Crain*

/s/ *Rebecca Brazzano*
Rebecca Brazzano

246847