UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------x

                    :  **Action No. 11-cv-1624 (JLL)(MAH)**

SHAH RAHMAN, Individually and on
Behalf of All Others Similarly Situated,  :  **ECF Case**

          Plaintiff,      :  **Electronically Filed**

      vs.

                    :  **<u>Oral Argument Requested</u>**

KID BRANDS, INC., et al.,

                    :

          Defendants.

-------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT BRUCE G. CRAIN'S
### <u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

WINDELS MARX LANE & MITTENDORF, LLP
David Graff
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1085
Fax: (212) 262-1215
dgraff@windelsmarx.com

DICKSTEIN SHAPIRO LLP
Eric B. Fisher (admitted *Pro Hac Vice*)
1633 Broadway
New York, NY 10019
Tel: (212) 277-6500
Fax: (212) 277-6501
fishere@dicksteinshapiro.com

*Attorneys for Defendant Bruce G. Crain*

DSMDB-3073039

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................1

SUMMARY OF FACTS .....................................................................3

ARGUMENT ...............................................................................6

A.  The Second Amended Complaint Fails to Allege Particularized Facts
That Give Rise To A Strong Inference Of Scienter As to Mr. Cain.......................6

   1.  The Second Amended Complaint Does Not Plead Facts
Demonstrating Mr. Crain's Knowledge Of The Alleged
Unlawful Or Improper Conduct At The Time Disclosures Were Made ..........8

   2.  The Complaint Does Not Allege Facts To Show That Mr. Crain
Had Any Motive To Engage In Securities Fraud ...........................................12

B.  There Is No Control Person Liability As To Mr. Cain .........................................14

CONCLUSION .............................................................................15

i

DSMDB-3073039

# TABLE OF AUTHORITIES

Cases ...................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................
..............................................................................................................................................

**Cases**........................................................................................................... Page

15 U.S.C. § 78u-4(b)(2) ..................................................................................................... 6

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004)........................................ 11

*GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2003).................................................. 14

*In re Alpharma Inc. Securities Litigation*, 372 F.3d 137, 153 (3d Cir. 2004).................................................. 15

*In re Intelligroup Sec. Litig.*, 527 F. Supp.2d 262, 284 (D.N.J. 2007).......................................................... 14

*In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, MDL No. 1658 (SRC), Civil Action Nos. 05-1151 (SRC), 05-2367 (SRC), 2011 WL 3444199, at *19 (D.N.J. Aug. 8, 2011) (*citing Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007)) ................................................ 6

*In re Merck*, 2011 WL 3444199, at *26.................................................................................................. 9

*Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009) ............................................. 15

*Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 278-79 (3d Cir. 2009) ........................................ 14

*Rahman v. Kids Brand, Inc.*, No. 11-1624, Slip. Op. at 43 (D.N.J. March 8, 2012) ........................................ 1

*See Nat'l Jr. Baseball League v. Pharmanet Dev. Group, Inc.*, 720 F. Supp.2d 517, 538-39 (D.N.J. 2010).. 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326, 127 S. Ct. 2499, 2511 (2007) ................... 12

*Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) ................................................................. 7

*Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007)) ............................................................... 13

ii

iii

DSMDB-3073039

Defendant Bruce G. Crain respectfully submits this memorandum of law in support of his motion to dismiss the Second Amended Class Action Complaint (the "Second Amended Complaint") in this action.

## PRELIMINARY STATEMENT

The Second Amended Complaint filed by the Plaintiff against Kid Brands, Inc. (the "Company"), Mr. Crain and the other Defendants in this Action suffers from the same pleading deficiencies that caused the Court to dismiss Plaintiff's First Amended Complaint. *Rahman v. Kids Brand, Inc.,* No. 11-1624, Slip. Op. at 43 (D.N.J. March 8, 2012) ("*Rahman I*" or the "March 8 Opinion"). In what is now the Plaintiff's third attempt to state a claim for alleged violations of the federal securities laws, Plaintiff has made several changes to his pleading, none of which remedy the numerous inadequacies identified by the Court in its Opinion and corresponding Order dismissing this action.

Even as now further amended, Plaintiff's Second Amended Complaint against Mr. Crain - who formerly served as President and Chief Executive Officer of the Company - does not satisfy the strict pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). Notwithstanding the addition of several new allegations and the introduction of three new confidential witnesses, the Second Amended Complaint still fails to allege facts giving rise to a strong inference that Mr. Crain acted with the culpable state of mind necessary to plead an

actionable claim under Section 10(b) of the Exchange Act.[1]  In particular, and as explained more fully below and in the Company's brief, Plaintiff's vague new allegations regarding the placement of unspecified labels on boxes containing merchandise located in LaJobi's New Jersey distribution center are neither logical, plausible, nor coherent.  That the purported "labeling" activity is alleged to have occurred during the period *after* the Company had already identified, investigated, self-reported and rectified certain customs violations further confirms the implausibility of the Plaintiff's claims.

The Second Amended Complaint contains no facts to even suggest – let alone give rise to a strong inference – that Mr. Crain knowingly made any false statement or that he acted recklessly with regard to the truth or falsity of his statements.  Moreover, Plaintiff has added nothing to the Second Amended Complaint which plausibly suggests that Mr. Crain had any knowledge that the Company's subsidiaries had violated U.S. Customs laws, or engaged in any other improper or unlawful conduct, prior to the Company's investigation and subsequent public disclosures.  Indeed, rather than suggesting any culpable conduct or state of mind, the facts alleged in the Second Amended Complaint

---

[1]     Terms not otherwise defined herein shall have the meaning set forth in the Company's memorandum of law in support of its motion to dismiss the Second Amended Complaint.

DSMDB-3073039

create a strong inference of Mr. Crain's (and the other Defendants') non-culpability.

It is now even more evident that the Second Amended Complaint's defects are incurable. Plaintiff's complaint has already been amended twice, and any further attempt to amend it would be futile. For the following reasons, and for the reasons set forth in the memorandum of law submitted by the Company in support of its motion to dismiss, the Second Amended Complaint against Mr. Crain should be dismissed with prejudice.

## SUMMARY OF FACTS

To avoid burdening the Court with repetitive briefing, Mr. Crain hereby incorporates by reference the Company's summary of facts and each of its arguments in its memorandum of law in support of its motion to dismiss Plaintiff's Second Amended Complaint, as though fully set forth herein. In what follows, Mr. Crain will focus primarily on the new allegations that are most pertinent to the claims asserted against him in the Second Amended Complaint, and in particular the Plaintiff's failure to cure the pleading defects identified by the Court in its March 8 Opinion.

According to the Plaintiff, the Defendants violated federal securities laws by making materially false and misleading statements in press releases and SEC filings by not acknowledging or disclosing alleged unlawful or improper conduct

3

DSMDB-3073039

in four categories: (1) customs practices, (2) product recalls and safety practices,
(3) staffing practices, and (4) maintenance of internal controls. (Second Amended
Complaint ¶ 6.) The allegations relating to product recalls and safety practices are
based on Plaintiff's claims that one of the Company's subsidiaries, LaJobi, sold a
recalled product under a different name, and that another subsidiary, Sassy, sold an
unsafe product. (*Id.* ¶¶ 44-46). The allegations relating to staffing practices are
based on (a) possible violations of foreign laws in connection with services
performed in Asia under an agreement between the Company and L&J Services,
and (b) the termination of domestic employees of unidentified subsidiaries of the
Company. (*Id.* ¶¶ 47-50). While Mr. Crain denies that any such illegal or improper
conduct occurred, Plaintiff has added nothing to his Second Amended Complaint
which suggests that Mr. Crain was aware of, or was in any way involved with, any
of these practices at any time relevant to this Action.

Similarly, the changes to Plaintiff's pleading that are apparently intended to
address the two remaining categories of conduct – customs practices and internal
controls – do not remedy the pleading deficiencies identified by the Court in
*Rahman I*, particularly with respect to the claims asserted against Mr. Crain. These
changes consist of vague assertions that unspecified labels were affixed to boxes
containing merchandise located in LaJobi's New Jersey warehouse on unspecified
dates. (*Id.* ¶ 39).

DSMDB-3073039

The source of Plaintiff's "labeling" allegations are two confidential witnesses, CW1 and CW2, who are alleged to be former employees of LaJobi. Importantly, however, CW2 was allegedly employed in LaJobi's Shipping and Receiving Department beginning in June 2011, three months after the Company discovered, self-reported and publicly disclosed the customs violations. (*Id.* ¶¶ 32, 103). It is further alleged that CW2 saw the "CEO" touring the LaJobi facility "approximately every other month throughout CW2's employment" from June 2011 until January 2012. (*Id.* ¶¶ 32, 40). However, CW2 does not identify the "CEO" as Mr. Crain, who resigned from the Company on September 12, 2011 (*Id.* ¶ 26), leaving an overlap period of less than four months during which CW2 was employed by LaJobi and Mr. Crain served as CEO of the Company.

Plaintiff also alleges in his Second Amended Complaint that Mr. Crain was seen visiting the LaJobi facility from time to time, and that during those visits he would meet with Bivona, or talk with managers who were overseeing the alleged labeling of boxes. (*Id.* ¶¶ 41, 90, 139, 149). Plaintiff also alleges that the "CEO and CFO" would meet with these managers in the office of LaJobi's Operations Manager, Myles McGrath where the labels were present. (*Id.* ¶¶ 33, 148). However, the Second Amended Complaint does not specify the identity of these officers, when these meetings are alleged to have occurred, or what may have been discussed during those meetings. The Second Amended Complaint also fails to

5

DSMDB-3073039

identify the source of the confidential witness' knowledge regarding these visits and meetings.

## ARGUMENT

### A. The Second Amended Complaint Fails To Allege Particularized Facts That Give Rise To A Strong Inference Of Scienter As To Mr. Crain

The heightened pleading standards of the PSLRA require that, with respect to each act or omission alleged to violate Section 10(b) of the Exchange Act, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A securities fraud claim "cannot survive a motion to dismiss unless it is supported by factual allegations sufficiently demonstrating each defendant's role in the alleged fraud and his or her state of mind in committing such a violation." *In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, MDL No. 1658 (SRC), Civil Action Nos. 05-1151 (SRC), 05-2367 (SRC), 2011 WL 3444199, at *19 (D.N.J. Aug. 8, 2011) (*citing Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007)). Each defendant's involvement in the alleged fraud must be set forth with particularity. *Id.*

In his Second Amended Complaint, Plaintiff has again failed to plead particularized facts sufficient to give rise to a strong inference that Mr. Crain acted with the requisite fraudulent intent when he made the supposedly false statements. *See, e.g., Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) (PSLRA

6

DSMDB-3073039

requires that plaintiff plead facts giving rise to a "strong inference that the defendant acted with the required state of mind"). As the Supreme Court has explained, a "strong inference" means "a powerful or cogent inference that is at least as compelling as any opposing inference." *Id.* at 327 (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2510 (2007)).

On their face, the facts alleged in the Second Amended Complaint do not support an inference, much less a strong inference, that Mr. Crain, or any other defendant, acted with a culpable state of mind. Even as further amended, the Second Amended Complaint does not plead facts that give rise to strong inference of fraudulent intent. To the contrary, the facts alleged by Plaintiff actually support the inference that Mr. Crain, and each of the other Defendants, at all times acted honestly and in good faith with respect to all matters, including without limitation the prompt disclosure of the results of a thorough, independent investigation into the Company's practices with respect to the payment of United States customs duties. The Plaintiff has failed to correct the pleading defects identified by the Court in its March 8 Opinion, and the Second Amended Complaint therefore continues to fall woefully short of the PSLRA's stringent requirements for pleading scienter.

7

1.    **The Second Amended Complaint Does Not Plead Facts Demonstrating Mr. Crain's Knowledge Of The Alleged Unlawful Or Improper Conduct At The Time Disclosures Were Made**

In the First Amended Complaint, Plaintiff generally alleged scienter as to Mr. Crain based on his position as President and CEO of the Company, rather than on any specific information alleged to have been made available or provided to Mr. Crain.  As the Court determined in its March 8 Opinion dismissing the First Amended Complaint, these general allegations were insufficient and did not give rise to an inference of scienter. *Rahman I,* at 43.  Specifically, the Court noted that Plaintiff's First Amended Complaint "alleges no facts which single out either Defendant Crain or Defendant Paglinco regarding the nature of the knowledge or recklessness they possessed based on either the specific information regarding the customs violations they would have had access to based on their position with Kids Brands or any information they would have received based on specific events or witnesses that conveyed that information to them." *Id.*; *see also In re Merck,* 2011 WL 3444199, at *26 (allegations against individual officer based "exclusively on the responsibilities attendant to his position" and his access to the company's information insufficient to satisfy scienter pleading requirement of PSLRA).[2]

---

[2]     *See also In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 586 (D.N.J. 2001) ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them."); *McGowan Investors LP v. Frucher*, 481 F. Supp.2d 405, 417-18 (E.D. Pa. 2007) ("Nor may scienter be

DSMDB-3073039

The Second Amended Complaint does not rectify this fatal flaw to the Plaintiff's claims against Mr. Crain in this case.  To the contrary, Plaintiff again fails to allege particularized facts that Mr. Crain had knowledge of any information that would have put him individually on notice that the Company's subsidiaries had violated U.S. Customs laws, or engaged in any other improper or unlawful conduct, prior to the Company's investigation and subsequent public disclosures.

The vague and ambiguous allegations regarding the purported "labeling" of products located at LaJobi's distribution facility in New Jersey, as well as unspecified meetings held at the Lajobi facility, are plainly insufficient to satisfy the heightened scienter pleading requirements under the PSLRA and the law of the Third Circuit.  These allegations, according to the Second Amended Complaint, are based on information supplied by confidential witnesses.  As the Court recognized in its March 8 Opinion, when assessing allegations sourced in confidential witnesses, it is necessary to consider the "detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia." *Rahman I* at 25

---

shown simply by suggesting defendant by virtue of her position 'must have known' about fraud."), *aff'd nom., McGowan Investors LP v. Meyer*, 392 F. App'x 39 (3d Cir. 2010).

DSMDB-3073039

(quoting *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004)).

When viewed in light of the foregoing criteria, it is evident that Plaintiff has yet again failed to allege particularized facts that raise the requisite strong inference of scienter as to Mr. Crain.  The Second Amended Complaint does not specify the contents of the labels that were purportedly fixed to the boxes containing the merchandise.  Moreover, Plaintiff does not allege any particularized facts demonstrating that the alleged "labeling" was done for any improper or unlawful purpose, and the conclusory statements in the Second Amended Complaint, which are based on vague and non-specific allegations of confidential witnesses, are woefully insufficient to meet the heightened pleading standard that Plaintiff is required to satisfy in this case.

Plaintiff's allegations regarding Mr. Crain's periodic visits to the LaJobi facility and meetings with LaJobi managers and employees are similarly deficient. The Second Amended Complaint does not specify when these meetings and visits occurred, or contain any allegations as to what was discussed at the meetings. Perhaps more tellingly, the Second Amended Complaint does not reveal how CW2 is supposed to have learned about the existence of such meetings.  There are no particularized facts alleged which explain how CW2 obtained information about the alleged meetings, or even whether CW2 has personal, first-hand knowledge

10

that such meetings in fact occurred.  Because the Second Amended Complaint does not contain specific details explaining the source of CW2's personal knowledge, all allegations attributed to CW2 (as well as the other confidential witnesses) should be disregarded in their entirety.  *See Nat'l Jr. Baseball League v. Pharmanet Dev. Group, Inc.*, 720 F. Supp.2d 517, 538-39 (D.N.J. 2010).

The Plaintiff's allegations are also ambiguous as to whether Mr. Crain was the unspecified "CEO" that CW2 is said to have witnessed touring the LaJobi facility "throughout CW2's employment."  (Second Amended Complaint ¶¶ 32, 40).  According to the Second Amended Complaint, CW2 was employed with LaJobi from June 2011 until January 2012 (*id.* ¶ 32), and Mr. Crain resigned from the Company on September 12, 2011 (*id.* at 26).  Based on the allegations in the Second Amended Complaint, it is impossible to determine whether or not CW2 saw Mr. Crain at the LaJobi facility during the relevant four month period.

The omissions and ambiguities in these confidential witness allegations "'count against inferring scienter'" as to Mr. Crain.  *Rahman I* at 25 -26 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326, 127 S. Ct. 2499, 2511 (2007)).  But perhaps more importantly, the allegations sourced from Plaintiff's confidential witnesses are neither coherent nor plausible.  According to Plaintiff, CW2 did not begin working at LaJobi until June 2011, several months after the Company had investigated and disclosed the customs violations.  Even if

11

the purported "labeling" allegations were somehow tied to those customs violations in the Second Amended Complaint (and they are not), it is nonsensical to conclude that the Company's senior management would be involved in any activity that would further contribute to those violations.  In short, the Plaintiff's confidential witness allegations do not satisfy the criteria necessary to support a showing of scienter under the PSLRA, and therefore must be discounted steeply. *Rahman I* at 25.

Accordingly, Plaintiff has again failed to plead facts giving rise to a strong inference of scienter as to Mr. Crain, as required under the heightened pleading requirements of the PSLRA.  Rather than creating an inference of culpability on behalf of Mr. Crain, "the 'most plausible inference flowing from these facts is a non-culpable inference.'"  *Rahman I* at 42 (quoting *Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007)).  The claims against Mr. Crain should therefore be dismissed with prejudice.

### 2.    The Complaint Does Not Allege Facts To Show That Mr. Crain Had Any Motive To Engage In Securities Fraud

The Third Circuit has "stress[ed] the insufficiency of motives 'generally possessed by most corporate directors and officers,' such as improving a company's performance, even when that individual's compensation is tied to the success of a transaction or an increase in sales."  *Merck,* 2011 WL 3444199, at *26 (quoting *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 278-79 (3d

12

DSMDB-3073039

Cir. 2009)).  Allegations of motive must show that "the individual corporate defendants stood to gain in a concrete and personal way" from the alleged false or misleading statements.  *In re Intelligroup Sec. Litig.*, 527 F. Supp.2d 262, 284 (D.N.J. 2007).

The Second Amended Complaint does not plead *any* facts to support an inference, strong or otherwise, that Mr. Crain had any motive to engage in securities fraud.  In fact, the "corporate profitability" allegations, which the Court concluded were insufficient to assert motive or opportunity on behalf of the Individual Defendants, *Rahman I* at 42-43, were not even retained in the Second Amended Complaint.  *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2003) (recognizing that motives generally possessed by most corporate directors and officers are not sufficient).

The absence of any allegation of motive or opportunity, when considered in the context of the various other pleading deficiencies in the Second Amended Complaint, further shows a lack of scienter on the part of Mr. Crain as well as the other Defendants.  *Tellabs,* 551 U.S. at 325.  As the Court concluded in dismissing Plaintiff's First Amended Complaint, "[s]ince no personal benefit is alleged as to the Individual Defendants, or any other indicia beyond incentive to ensure Kids Brands' success, Plaintiff's allegations as to said Defendants lack the overall support necessary to establish the heightened pleading requirements for scienter

DSMDB-3073039

under the PSLRA." *Rahman I* at 42-43.  The same holds true with respect to the Second Amended Complaint, and therefore the Plaintiff's claims against Mr. Crain should be dismissed with prejudice.

**B.**    **There Is No Control Person Liability As To Mr. Crain**

Section 20(a) of the Exchange Act "creates a cause of action against individuals who exercise control over a 'controlled person,' including a corporation, that has committed a violation of § 10(b)." *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).  Here, because the "controlled person" (i.e., the Company) is not liable, "there can be no controlling person liability" as to Mr. Crain under Section 20(a) of the Exchange Act.  *See In re Alpharma Inc. Securities Litigation*, 372 F.3d 137, 153 (3d Cir. 2004). Moreover, because the Complaint does not plead any facts to show that Mr. Crain acted with a culpable state of mind, Plaintiff has failed to allege the requisite culpable participation by Mr. Crain.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

14

## <u>CONCLUSION</u>

For all of the reasons set forth in the Company's brief and above, the Second

Amended Complaint against Mr. Crain should be dismissed with prejudice, and

this Court should grant Mr. Crain such other and further relief as is just and proper.


Dated:  June 29, 2012
      New York, New York


           Respectfully submitted,

           WINDELS MARX LANE & MITTENDORF, LLP

           By: <u>/s/ David Graff</u>
               David Graff
           156 West 56th Street
           New York, New York 10019
           Tel: (212) 237-1085
           Fax: (212) 262-1215
           dgraff@windelsmarx.com


           DICKSTEIN SHAPIRO LLP

           By: <u>/s/ Eric B. Fisher</u>
               Eric B. Fisher (admitted *Pro Hac Vice*)
           1633 Broadway
           New York, NY 10019
           Tel: (212) 277-6500
           Fax: (212) 277-6501
           fishere@dicksteinshapiro.com


           *Attorneys for Defendant Bruce G. Crain*

DSMDB-3073039