UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAH RAHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KIDS BRANDS, INC., et al,<br><br>Defendants. | Civil Action No. 11-cv-1624 (JLL) (MAH)<br><br>**ECF Case**<br><br>**Electronically Filed**<br><br>**Return Date: October 1, 2012**<br><br><u>**Oral Argument Requested**</u> |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT BRUCE G. CRAIN'S <u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

WINDELS MARX LANE & MITTENDORF, LLP
David Graff
156 West 56th Street
New York, NY 10019
Tel: (212) 237-1085
Fax: (212) 262-1215
dgraff@windelsmarx.com

DICKSTEIN SHAPIRO LLP
Eric B. Fisher (admitted *Pro Hac Vice*)
1633 Broadway
New York, NY 10019
Tel: (212) 277-6500
Fax: (212) 277-6501
fishere@dicksteinshapiro.com

*Attorneys for Defendant Bruce G. Crain*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................... 2

    A.    The Second Amended Complaint, Like The First Amended Complaint, Fails To Allege Particularized Facts Raising A Strong Inference Of Scienter As To Mr. Crain ............................................... 2

        1.    The Confidential Witnesses Do Not Provide Particularized Facts Necessary To Satisfy The Requirements For Pleading Scienter ........................................................................................ 4

        2.    The Second Amended Complaint Fails To Allege Facts Showing That Mr. Crain Had Any Motive To Engage In Securities Fraud ................................................................................ 11

    B.    There Is No Control Person Liability As To Mr. Crain ...................... 12

CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**   **Page**

*In re Alpharma Inc. Securities Litigation*, 372 F.3d 137 (3d Cir. 2004) ............... 12

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126
   (3d Cir. 2004) ..................................................................................... 8

*In re Intelligroup Sec. Litig.*, 527 F. Supp.2d 262 (D.N.J. 2007) ........................ 9, 11

*In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*,
   MDL No. 1658 (SRC), Civil Action Nos. 05-1151 (SRC),
   05-2367 (SRC), 2011 WL 3444199 (D.N.J. Aug. 8, 2011) ................................. 3

*In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551 (D.N.J. 2001) ........................ 3

*Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242
   (3d Cir. 2009) ................................................................................ 4, 6, 9

*McGowan Investors LP v. Frucher*, 481 F. Supp.2d 405 (E.D. Pa. 2007) ............... 3

*McGowan Investors LP v. Meyer*, 392 F. App'x 39 (3d Cir. 2010) ........................ 3

*Nat'l Jr. Baseball League v. Pharmanet Dev. Group, Inc.*,
   720 F. Supp.2d 517 (D.N.J. 2010) ..................................................................... 8

*Rahman v. Kids Brand, Inc.*, No. 11-1624, Slip. Op.
   (D.N.J. March 8, 2012) ............................................................................passim

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S.Ct. 2499 (2007) .........................................................passim

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) .............................. 3, 10

Defendant Bruce G. Crain respectfully submits this reply memorandum of law in further support of his motion to dismiss the Second Amended Class Action Complaint (the "Second Amended Complaint" or "SAC") in this action.

## PRELIMINARY STATEMENT

For the reasons explained in the opening memoranda of law submitted by Mr. Crain and Kid Brands, Inc. (the "Company"), and in the reply memorandum of law submitted by the Company, the Second Amended Complaint should be dismissed with prejudice. To avoid burdening the Court with repetitive briefing, Mr. Crain hereby incorporates by reference the Company's arguments set forth in the Company's reply brief as though fully set forth herein.

The Second Amended Complaint filed by the Plaintiff against the Company, Mr. Crain and the other Defendants in this Action does not cure the numerous pleading deficiencies identified by the Court in its memorandum decision dismissing Plaintiff's First Amended Complaint. *Rahman v. Kids Brand, Inc.*, No. 11-1624, Slip. Op. (D.N.J. March 8, 2012) ("*Rahman I*"). Plaintiff's attempt to shore up his allegations in his omnibus opposition ("Opposition") to the Defendants' motions to dismiss with numerous exaggerated and embellished statements does not (and of course cannot) rectify the glaring infirmities of his Second Amended Complaint. Simply put, and even as further amended, Plaintiff's

Second Amended Complaint still fails to allege facts giving rise to a strong inference that Mr. Crain acted with the culpable state of mind necessary to plead an actionable claim under Section 10(b) of the Exchange Act.[1] Because the Second Amended Complaint continues to fall short of the strict requirements for pleading securities fraud against Mr. Crain and the other Defendants, it should be dismissed with prejudice.

## ARGUMENT

### A. The Second Amended Complaint, Like The First Amended Complaint, Fails To Allege Particularized Facts Raising A Strong Inference Of Scienter As To Mr. Crain

In its opinion dismissing the First Amended Complaint, the Court held that Plaintiff's general allegations with respect to Mr. Crain based on his position as President and CEO of Company, as opposed to any specific information alleged to have been made available or provided to Mr. Crain, were insufficient and did not give rise to an inference of scienter. *Rahman I* at 42. Specifically, the Court held that the First Amended Complaint:

> alleges no facts which single out either Defendant Crain or Defendant Paglinco regarding the nature of the knowledge or recklessness they possessed based on either the specific information regarding the customs violations they would have had access to based on their position within Kids Brands or any information they would have

---

[1] Terms not otherwise defined herein shall have the meaning set forth in Mr. Crain's opening brief in support of his motion to dismiss the Second Amended Complaint.

2

received based on specific events or witnesses that conveyed information to them.

*Id.*[2]

In his Second Amended Complaint, Plaintiff attempted to remedy these pleading defects by adding a number of vague and diffuse allegations, sourced in several confidential witnesses, regarding the "re-labeling" of boxes containing merchandise located in LaJobi's New Jersey distribution center. The confidential witnesses' "re-labeling" allegations, however, do not give rise to the necessary strong inference - "a powerful or cogent inference that is at least as compelling as any opposing inference" – that is required under the PLSRA. *See Winer Family Trust v. Queen*, 503 F.3d 319, 326 - 27 (3d Cir. 2007) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2510 (2007)). Plaintiff has again failed to allege particularized facts suggesting that Mr. Crain engaged in any improper or unlawful conduct, or that he had knowledge of any information

---

[2] *See also In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, MDL No. 1658 (SRC), Civil Action Nos. 05-1151 (SRC), 05-2367 (SRC), 2011 WL 3444199, at *26 (D.N.J. Aug. 8, 2011) (allegations against individual officer based "exclusively on the responsibilities attendant to his position" and his access to the company's information insufficient to satisfy scienter pleading requirement of PSLRA); *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 586 (D.N.J. 2001) ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them."); *McGowan Investors LP v. Frucher*, 481 F. Supp.2d 405, 417-18 (E.D. Pa. 2007) ("Nor may scienter be shown simply by suggesting defendant by virtue of her position 'must have known' about fraud."), *aff'd sub nom.*, *McGowan Investors LP v. Meyer*, 392 F. App'x 39 (3d Cir. 2010).

3

that would have put him individually on notice that the Company's subsidiaries had violated U.S. Customs laws prior to the Company's investigation and subsequent public disclosures.

### 1. The Confidential Witnesses Do Not Provide Particularized Facts Necessary To Satisfy The Requirements For Pleading Scienter

A review of the allegations attributed to the various confidential witnesses, whether considered individually or collectively, demonstrates the absence of any inference of wrongdoing, strong or otherwise, by Mr. Crain. Indeed, some of these confidential witnesses add nothing at all to Plaintiff's "re-labeling" theory.[3] At best, the confidential witnesses provide nothing more than conclusory statements that are uncorroborated and unsupported by particularized facts.

CW3, identified as CW1 in Plaintiff's First Amended Complaint and as the former Lajobi Distribution Manager employed by the Company for over ten years from May 2000 through November 2010, makes no allegations whatsoever regarding the "re-labeling" of products, or any allegations at all regarding Mr.

---

[3] As the Court recognized in its opinion dismissing Plaintiff's First Amended Complaint, when assessing allegations sourced in confidential witnesses, it is necessary to consider the "detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia." *Rahman I* at 25 (*quoting Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir. 2009)). The Second Amended Complaint is utterly lacking in these necessary characteristics.

4

Crain. (SAC ¶ 33).[4] Similarly, CW4 - identified as CW2 in the First Amended Complaint - makes no allegations about Mr. Crain, or for that matter, about any "re-labeling" activities, and instead speaks only generally about Sarbanes-Oxley compliance issues (SAC ¶ 31).

CW5, identified as CW3 in the First Amended Complaint, alleges only that he "recalled seeing" Mr. Crain and another executive "from time to time on the LaJobi premises" and that during these visits they "would often meet with Bivona." (SAC ¶ 41). CW5 has nothing to say at all about "re-labeling," and does not attribute, either explicitly or implicitly, any wrongdoing to Mr. Crain or any other executive. The unremarkable allegation that company executives would periodically visit the "LaJobi premises" – the most plausible inference being that such visits are nothing more than a routine part of such executives' jobs - contributes nothing to Plaintiff's attempt to plead scienter as to Mr. Crain, and certainly does not suggest the requisite "strong inference" of scienter required under the PSLRA.

CW6, introduced for the first time in Plaintiff's Second Amended Complaint, likewise offers no allegations regarding "re-labeling," Mr. Crain, or any other Defendant. The only allegations relating or attributed to CW6 in the

---

[4] Moreover, the Court has already held, in *Rahman I*, that this confidential witness's allegations, based on "rumors," "strange feelings" and "bits and pieces" of information, were insufficient to support a showing of scienter under the PSLRA. *Rahman I* at 26-27.

5

Second Amended Complaint are that he was "recently terminated" and that he has sued "Kids Line for failure to honor his employment contract." (SAC ¶¶ 36, 50). Again, these allegations in no way support any inference, much less the required "powerful" and "cogent" inference, of scienter. *Tellabs*, 551 U.S. at 323.

The two additional confidential witnesses identified for the first time in the Second Amended Complaint also fail to provide specific, particularized facts that are necessary to satisfy the scienter pleading requirements under the PSLRA with respect to Mr. Crain and the other Defendants. The newly designated CW1 does make allegations regarding the use of false "country of origin" labels (as opposed to "factory of origin" labels).[5] Significantly, however, CW1 does not allege that Mr. Crain or any other executive had any knowledge of such activities, and makes no allegations that even refer to Mr. Crain. (SAC ¶ 38).

The other new confidential witness that Plaintiff has identified, CW2, makes vague and conclusory allegations about "labels" and "meetings" that are wholly insufficient to satisfy the scienter pleading requirements identified by the Court in *Rahman I* and set forth in *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 278-79 (3d Cir. 2009). The sparse allegations regarding meetings that would take place between "McGrath and Brenda" and "the CEO and CFO" lack

---

[5] As further explained in the Company's opening brief and in its reply brief, Plaintiff's theory that the "re-labeling" of items was done in furtherance of a scheme to violate Customs laws is implausible on its face.

the necessary specific and particularized facts, including what was actually discussed at such meetings, when those meetings are alleged to have taken place, or even the identification by name of the "CEO and CFO" alleged to have participated in the meetings. (SAC ¶ 40).

With respect to the identification of the executives, and notwithstanding Plaintiff's assertions in footnote 10 of his Opposition, the allegations attributed to CW2 in the Second Amended Complaint are ambiguous and do not create a "reasonable inference" that Mr. Crain is the unspecified "CEO" that CW2 is said to have witnessed touring the LaJobi facility "throughout CW2's employment." (Second Amended Complaint ¶¶ 32, 40). Plaintiff suggests that such a "reasonable inference" may be drawn because (a) CW5, who worked at LaJobi from March 2010 to April 2011, recalled seeing Mr. Crain at the LaJobi premises "from time to time," and (b) beginning in June 2011, two months after CW5 left the company, CW2 recalled seeing the "CEO" at the LaJobi facilities "approximately every other month *throughout CW2's employment.*" (Opposition at 22 n.10) (emphasis supplied). But these independent, cobbled-together allegations do not support Plaintiff's premise that the "CEO" described by CW2 must be Mr. Crain, who resigned from the Company on September 12, 2011, approximately four months before CW2's employment at LaJobi ended. (SAC ¶¶ 26, 32). Plaintiff ignores the critical point that CW2 alleges seeing the unspecified CEO "throughout CW2's

employment," a period of time that extended beyond Mr. Crain's tenure as CEO. It is therefore impossible, based on these vague, incomplete and ambiguous allegations, to determine whether the CEO that CW2 is referring to is Mr. Crain, and the inability of CW2 to identify the "CEO and CFO" by name strongly suggests that these allegations are based not on CW2's personal knowledge, but rather on hearsay. Because these confidential witness allegations lack the necessary detail to assess their reliability, they must be discounted. *Tellabs*, 551 U.S. at 326 ("[O]missions and ambiguities count against inferring scienter"); *Rahman I* at 25-26; *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004); *Nat'l Jr. Baseball League v. Pharmanet Dev. Group, Inc.*, 720 F. Supp.2d 517, 538-39 (D.N.J. 2010).[6]

Furthermore, there is no allegation that CW2 attended the meetings, and the Second Amended Complaint does not disclose the source of CW2's knowledge of the alleged meetings (or what may have been discussed at those meetings) or, as required to establish a culpable state of mind of the Defendants, indicate whether the allegations are based on CW2's personal, firsthand knowledge rather than

---

[6] The fact that CW2's employment at LaJobi began in June 2011 – several months after the Company's public disclosure of the LaJobi Customs violations (Second Amended Complaint ¶ 151) – further undermines Plaintiff's theory that the alleged meetings were held in furtherance of a scheme involving the continued violation of U.S. Customs laws. The inference that Plaintiff seeks to draw from CW2's uncorroborated allegations is not even plausible, much less "cogent" or "compelling." *Tellabs*, 551 U.S. at 314.

8

hearsay (as appears to be the case). *See Rahman I* at 25 - 27; *Avaya, Inc.*, 564 F.3d at 263; *In re Intelligroup Sec. Litig.*, 527 F. Supp.2d 262, 361 (D.N.J. 2007). Instead of the required detailed facts and other indicia, *Chubb*, 394 F.3d at 147, Plaintiff provides only speculation, assumptions, and unsupported conclusions. Given the absence of specific details explaining the source of CW2's (and the other confidential witnesses') knowledge, the Court should disregard all allegations attributed to them in their entirety. *See Avaya, Inc.*, 564 F.3d at 263; *Pharmanet*, 720 F. Supp.2d at 538-39.

Left with nothing by conclusory statements and speculation in his amended pleading, Plaintiff attempts to bolster his allegations in his Opposition by either exaggerating the allegations in the Second Amended Complaint, or by simply repeating the various conclusory and unsupportable statements set forth therein. Thus, for example, Plaintiff asserts in the Opposition that Mr. Crain and Mr. Paglinco maintained a "constant presence" at the LaJobi facilities during the Class Period "and since" (Opposition at 2-3, 38), even though CW2 alleges only that they visited the facilities "approximately every other month" over the course of the six month period when CW2 worked at LaJobi (SAC ¶¶ 32, 138), and even though CW5 alleges only that Mr. Crain was present "from time to time on the LaJobi premises." (SAC ¶ 41).

9

Plaintiff also repeats a number of other inflammatory, yet conclusory (and wholly unsupported) allegations, including assertions that Mr. Crain and Mr. Paglinco were "actively engaged" in a "scheme" and a "pattern and practice" to violate U.S. Customs laws (Opposition at 4, 6, 8, 38), and were "overseeing" and "orchestrating" such violations (Opposition at 2-3, 20-22, 38). Such hyperbole, of course, is not a substitute for the particularized facts that are required to satisfy the scienter pleading requirements under the PSLRA.

The numerous omissions and ambiguities in these confidential witness allegations "'count against inferring scienter'" as to Mr. Crain. *Rahman I* at 25 -26 (quoting *Tellabs*, 551 U.S. at 326). In short, Plaintiff's confidential witness allegations do not satisfy the criteria necessary to support a showing of scienter under the PSLRA, and therefore must be discounted steeply. *Rahman I* at 25. Plaintiff has again failed to plead facts giving rise to a strong inference of scienter as to Mr. Crain, as required under the heightened pleading requirements of the PSLRA. *Rahman* I at 11; *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007). The Second Amended Complaint does not create an inference of culpability on behalf of Mr. Crain, and therefore does not cure the pleading deficiencies recognized by the Court in *Rahman I*. The claims against Mr. Crain should therefore be dismissed with prejudice.

### 2. The Second Amended Complaint Fails To Allege Facts Showing That Mr. Crain Had Any Motive To Engage In Securities Fraud

The Second Amended Complaint does not plead any facts to support an inference, strong or otherwise, that Mr. Crain had any motive to engage in securities fraud. Plaintiff does not dispute this, but instead argues that motive allegations are not required to state a claim for securities fraud. (Opposition at 35-36). Plaintiff's argument, however, misses the point.

Although the absence of motive allegations is not deemed fatal to a securities fraud complaint, *Tellabs*, 551 U.S. at 325, it is equally true that the absence of any allegation of motive or opportunity, when considered in the context of the various other pleading deficiencies in the Second Amended Complaint, further shows a lack of scienter on the part of Mr. Crain as well as the other Defendants. *Tellabs*, 551 U.S. at 325; *Intelligroup*, 527 F. Supp.2d at 284. Notably, in its opinion dismissing Plaintiff's First Amended Complaint, the Court recognized that "[s]ince no personal benefit is alleged as to the Individual Defendants, or any other indicia beyond incentive to ensure Kids Brands' success, Plaintiff's allegations as to said Defendants lack the overall factual support necessary to establish the heightened pleading requirements for scienter under the PSLRA." *Rahman* I at 42-43. The same holds true with respect to the Second Amended Complaint, and therefore the Plaintiff's claims against Mr. Crain should be dismissed with prejudice.

B.  **There Is No Control Person Liability As To Mr. Crain**

Plaintiff concedes that there can be no controlling person liability as to an individual under Section 20(a) of the Exchange Act where the "controlled person" (*i.e.* the Company) is not liable. (Opposition at 53). Here, because the Company is not liable, "there can be no controlling person liability" as to Mr. Crain under Section 20(a) of the Exchange Act. *See In re Alpharma Inc. Securities Litigation*, 372 F.3d 137, 153 (3d Cir. 2004). Furthermore, for the reasons set forth above and in Mr. Crain's opening brief, the Second Amended Complaint does not plead any facts to show that Mr. Crain acted with a culpable state of mind, and therefore Plaintiff has failed to allege the requisite culpable participation by Mr. Crain.

## CONCLUSION

For all of the reasons set forth in Mr. Crain's and the Company's opening and reply briefs, the Second Amended Complaint against Mr. Crain should be dismissed with prejudice, and this Court should grant Mr. Crain such other and further relief as is just and proper.

[SIGNATURE PAGE FOLLOWS]

Dated: September 21, 2012
New York, New York

RESPECTFULLY SUBMITTED,

WINDELS MARX LANE & MITTENDORF, LLP
By: /s/ David Graff
David Graff
156 West 56th Street
New York, NY  10019
Tel:    (212) 237-1085
Fax:    (212) 262-1215
dgraff@windelsmarx.com

DICKSTEIN SHAPIRO LLP

By: /s/ Eric B. Fisher
Eric B. Fisher
1633 Broadway
New York, NY  10019
Tel:    (212) 277-6500
FAX:    (212) 277-6501
fishere@dicksteinshapiro.com

*Attorneys for Defendant Bruce G. Crain*

13